In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1112

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEVAN PIERSON,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-CR-00206-JES-TAB-1 — **James E. Shadid**, *Judge*.[*]

ARGUED FEBRUARY 6, 2019 — DECIDED MAY 31, 2019

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A jury found appellant Devan
Pierson guilty of possessing drugs with intent to distribute
and two related firearm crimes. Because of Pierson's prior
criminal record, his mandatory sentence was life in prison. He
raises three issues on appeal. The first, raised for the first time

---

[*] Of the Central District of Illinois, sitting by designation.

on appeal, is whether events at his trial added up to a constructive amendment of the two firearm charges in his indictment, which charged him with possession of one particular gun. Under our precedent in *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991), we conclude that an error occurred. It was not, however, a "plain error" that warrants reversal, and it did not affect Pierson's substantial rights. Second, Pierson argues that the court erred under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by imposing the mandatory life sentence without having the jury find that he had two prior felony drug convictions. This argument is foreclosed by controlling Supreme Court precedent. See *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Third, he seeks the benefit of the First Step Act, which was enacted while Pierson's appeal was pending and which lowered the mandatory minimum sentence. The Act does not apply to Pierson, whose sentence was imposed before the Act took effect. We affirm Pierson's convictions and sentence.

I.  *Factual and Procedural Background*

A.  *The Search and Arrest*

The Indianapolis Metropolitan Police Department obtained a warrant to search an apartment where they suspected defendant Pierson was distributing drugs. Before executing the warrant, officers saw a disheveled, jittery man who, they said, looked like a substance abuser. The officers watched him ride a bicycle to the apartment parking lot and get into the passenger seat of a gray Chevrolet Malibu. Moments later, the man got out of the Malibu and rode away. Pierson then emerged from the driver's seat, retrieved a white bag from the trunk, and entered the apartment building.

Officers then executed the search warrant. In the apartment, they found the white bag sitting on top of the shoes that Pierson had been wearing when he entered the building. The white bag contained 91.25 grams of heroin, 6.34 grams of cocaine, and 100.47 grams of actual methamphetamine. Next to the white bag, the officers found two more bags. One contained 19.49 grams of cocaine. The other contained 2.38 grams of cocaine, 7.45 grams of methamphetamine, and 7.58 grams of heroin. Throughout the apartment, officers found other evidence of drug trafficking: surgical masks, plastic gloves, digital scales, and a bottle of lactose. In a kitchen drawer, officers found a Taurus Model PT 24/7 G2 .45 caliber handgun.

Officers then searched the Malibu. They found papers indicating that Pierson had purchased and insured the car. They also discovered that the center console had been modified to create a hidden void, where they found a second firearm, a Taurus Model PT 145 .45 caliber handgun. Both handguns were checked for fingerprints, but Pierson's prints were not on either. No fingerprints were recovered from what we will call the "car gun." A fingerprint belonging to an unknown person was recovered from the "kitchen gun."

B. *Indictment and Trial*

The indictment charged Pierson with three crimes: (1) possessing controlled substances with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possessing a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). In Counts II and III, the indictment specified only the car gun as the firearm charged—"that is, a Taurus Model PT 145 .45 caliber handgun."

Though only the car gun was charged, the government presented evidence at trial regarding both guns. Both were shown to the jury, and pictures of both were sent to the jury for deliberations. An ATF agent testified that both guns were manufactured in Brazil (providing a nexus with foreign commerce) and that both were stolen. After explaining where he found the kitchen gun, an officer testified that drug traffickers commonly possess firearms for protection. Pierson did not object to any of this evidence.

The government also presented evidence specific to the charged car gun. An officer testified that it was not unusual that Pierson's fingerprints were not on the car gun. Later, an officer explained the value of keeping a gun in a center console for purposes of drug trafficking. An officer also explained to the jury that a drug trafficker may, for protection and privacy, choose to keep a larger stash of drugs in the trunk while dealing drugs within the passenger compartment.

Before closing arguments, the district court gave the final jury instructions that both sides had approved. Using this circuit's pattern criminal jury instructions, the district court's instructions on Counts II and III did not signal that the car gun was the only firearm at issue. In closing argument, the government focused the jury on the car gun, making at least five statements that either tied the car gun to the drug trafficking crime of Count I or clarified that the car gun was the gun at issue in Counts II and III. When the prosecutor referred briefly to the kitchen gun in closing, he again clarified that the kitchen gun was not the gun charged: "The indictment deals with the gun in the car. What is charged in Count II and III is the stolen handgun behind the panel of the Defendant's car." In rebuttal, the prosecutor repeated the point: "We are talking

about the gun in the Defendant's car, not the gun in the kitchen … That is the gun that is the subject of Counts II and III."

In deliberations, the jury had a copy of the indictment, which contained the language specifying the model of the car gun. The verdict form referred the jury to the indictment, requiring the jury to mark "guilty" or "not guilty" for each charge "as described in the Indictment." The jury returned guilty verdicts on all counts.

C. *Sentencing*

Before sentencing, the government filed an Information pursuant to 21 U.S.C § 851 alleging that Pierson had two prior felony drug convictions. Under the law at the time, these convictions required a mandatory term of life in prison for the drug charge. See 21 U.S.C. § 841(b)(1)(A)(viii) (Jan. 2018). The jury was not asked to find that Pierson had those prior convictions; the district court made that finding, without objection, based on the § 851 Information. In addition to the mandatory life term, Pierson was sentenced to five years on Count II to be served consecutively to his life sentence, and a ten-year concurrent term for Count III.

II. *Analysis*

A. *Constructive Amendment*

On appeal, Pierson argues that his two firearm convictions should be vacated and remanded for a new trial because his indictment was constructively amended in violation of his Fifth Amendment rights. He argues that the combination of admitting evidence of the kitchen gun and the court's jury instructions, which did not specify that guilt could be found

based only on the car gun, allowed the jury to convict him on grounds outside of the indictment.

1. *Standard of Review*

At trial, Pierson did not object to the kitchen gun evidence or the jury instructions, but we may still reverse under Federal Rule of Criminal Procedure 52(b), which provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." On plain-error review, we may reverse if: (1) an error occurred, (2) the error was plain, (3) it affected the defendant's substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Olano*, 507 U.S. 725, 732–738 (1993); *United States v. Duran*, 407 F.3d 828, 834 (7th Cir. 2005). An error is a deviation in the district court from a legal rule that the defendant did not waive. See *Olano*, 507 U.S. at 732–33. An error is "plain" if the law at the time of appellate review shows clearly that it was an error. See *Henderson v. United States*, 568 U.S. 266, 279 (2013).[1]

In *United States v. Olano*, the Supreme Court explained the third prong, affecting substantial rights: "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." 507 U.S. at 734 (internal citation omitted). The defendant bears the burden of showing this prejudice. *Id.*

---

[1] In applying plain-error review, we draw a distinction between waiver and forfeiture. Where a right is waivable and the defendant waived it by intentionally choosing not to exercise it, appellate review simply is not available. Forfeiture—the failure to make a timely assertion of a right—may still permit consideration of the error under Rule 52(b). See *Olano*, 507 U.S at 733–34.

The fourth prong of plain-error review is addressed to the appellate court's discretion. See *id.* at 732, 736–37. If the first three prongs are satisfied, we may reverse if we determine that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. "[I]n most circumstances, an error that does not affect the jury's verdict does not significantly impugn the 'fairness,' 'integrity,' or 'public reputation' of the judicial process." *United States v. Marcus*, 560 U.S. 258, 265–66 (2015), quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997).

### 2. *The Constructive Amendment*

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Only the grand jury can broaden an indictment through amendment; neither the government nor the court may do so. See *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). This rule both enforces the Fifth Amendment and helps to ensure that a defendant is given reasonable notice of the allegations against him so that he may best prepare a defense. See *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002).

The Fifth Amendment is violated by a so-called constructive amendment, which can occur when the proof offered at trial, the jury instructions, or both allow the jury to convict for an offense outside the scope of the indictment. See generally *Stirone*, 361 U.S. at 217–18; *United States v. Remsza*, 77 F.3d 1039, 1043 (7th Cir. 1996). When a constructive amendment occurs and the court overrules the defendant's objections to the impermissible broadening, the error is "reversible *per se.*" *United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir. 1991), citing *Stirone*, 361 U.S. at 217.

Pierson argues that his indictment was constructively amended by the combination of the government's kitchen-gun evidence and the court's jury instructions that failed to specify the car gun as the gun charged. Pierson's indictment narrowed the bases of conviction by specifying the car gun—not any other firearm—in Counts II and III. But the government, by presenting evidence of the non-indicted kitchen gun, created an exit ramp that might have tempted the jury to veer outside the confines of his indictment. The court's jury instructions did not block that exit ramp. Together, the evidence and jury instructions created the possibility of conviction based on either the car gun or kitchen gun, though the indictment required, more narrowly, that guilt be based on Pierson's possession of only the car gun. Under this circuit's precedent, this combination of the evidence and untailored jury instructions added up to a constructive amendment.

To support his constructive amendment argument, Pierson points to *United States v. Leichtnam*, supra, where the facts were very similar to this case and we found that a constructive amendment occurred. In *Leichtnam*, the defendant was indicted for using and carrying "a firearm, to wit: a Mossberg rifle" in relation to a drug trafficking crime. Though only a Mossberg rifle was mentioned in the indictment, the government entered two other firearms—two handguns—into evidence. The court then instructed the jury that the relevant count hinged on proof that the defendant "intentionally used or carried *a firearm*." 948 F.2d at 374–75 (emphasis added). Together, the evidence and instructions allowed the defendant to be convicted based on a finding that he carried *any* firearm, rather than the specific firearm charged. *Id.* at 380–81.

Specific language in an indictment that provides detail beyond the general elements of the crime makes the specified detail essential to the charged crime and must, therefore, be proven beyond a reasonable doubt. We made clear in *Leichtnam* that the specified firearm was, as a matter of law, "not merely surplusage." 948 F.2d at 379 ("By the way the government chose to frame Leichtnam's indictment, it made the Mossberg an essential part of the charge and limited the bases for possible conviction to the Mossberg.").[2]

Like the indictment in *Leichtnam*, Pierson's indictment specified the firearm with which he was charged—the car gun. Count II alleged:

> Pierson … did knowingly possess *a firearm, that is, a Taurus Model PT 145 .45 caliber handgun*, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the drug offense charged in Count One; all in violation of Title 18, United States Code, Section 924(c)(1)(A).

Count III alleged in pertinent part:

---

[2] In *Leichtnam*, we cited examples where a specific detail alleged in an indictment became an essential element of the charged crime: "When included in the indictment, the words to 'to wit … the DeCavalcante Family' become an essential element of the charge." *Leichtnam*, 948 F.2d at 377–78, citing *United States v. Weissman*, 899 F.2d 1111, 1115–16 (11th Cir. 1990), and *Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir. 1975) (indictment charged inducing two particular women into prostitution, so defendant could not be convicted of inducing prostitution generally).

>Pierson … having been convicted of a crime punishable by imprisonment for a term exceeding one year … did knowingly possess in and affecting interstate commerce, *a firearm, that is, a Taurus Model PT 145 .45 caliber handgun*, in violation of Title 18, United States Code, Section 922(g)(1).

The grand jury made the car gun an essential element of Counts II and III when, in the indictment, it specified the car gun by brand and model number. The government could have drafted the indictment to allege that Pierson possessed "a firearm," generally, but it chose not to. Therefore, conviction hinged on the car gun. Possession of the kitchen gun could not serve as a substitute basis for conviction.

Despite charging only the car gun, the government introduced evidence of both the car gun and the kitchen gun, just as the government in *Leichtnam* introduced evidence of firearms not mentioned in the indictment. In Pierson's case, the evidence highlighted similarities between the two guns. Both guns were .45 caliber, Taurus-brand handguns manufactured in Brazil, and both were stolen. The guns were also similar in appearance. The indictment specified the gun charged by its brand and model number and not by the location where it was found. It may have been difficult for the jury to distinguish the kitchen gun from the car gun. But the evidence alone did not constructively amend Pierson's indictment.[3]

---

[3] We do not suggest that the government introduced the kitchen-gun evidence to confuse the jury. The government offered the plausible explanation at oral argument that it introduced the kitchen-gun evidence to block any suggestion that it was withholding information from the jury.

Following *Leichtnam*, we find that the combination of the evidence and jury instructions added up to a constructive amendment of Pierson's indictment. In explaining to the jury the elements for Counts II and III, the district court itself never clarified that guilt hinged on finding that Pierson possessed the car gun. Instead, like the trial court in *Leichtnam*, the court explained in general terms that possession of "*a firearm*" was necessary, which we held added up to a constructive amendment when combined with evidence regarding uncharged firearms. 948 F.2d at 379; see also *United States v. Murphy*, 406 F.3d 857, 860–61 (7th Cir. 2005) (finding constructive amendment where court instructed that defendant could be convicted for witness tampering if he knowingly intimidated *or* used physical force against witness, though indictment charged him with witness tampering only via physical force or threat of force, and not intimidation).

In Pierson's case, the jury instructions similarly failed to limit the jury's attention to the car gun, creating at least a theoretical possibility that the jury could convict Pierson on grounds outside of the indictment. The kitchen-gun evidence without the untailored jury instructions, or vice versa, would not amount to a constructive amendment. But, following the rationale of *Leichtnam*, together they expanded the bases for conviction to proof of either the car gun or the kitchen gun.

The constructive amendment could have been avoided easily in this case. Most obviously, Pierson could have objected to the evidence or the jury instructions. He did not. "Had he done so, the district judge might well have acted to avoid any error." *Leichtnam*, 948 F.2d at 375. Or the government could have drafted a broader indictment; it was not required to charge a specific firearm. Or the government could

have simply withheld the kitchen-gun evidence. Or, even with the kitchen-gun evidence, more specific jury instructions would have cleared up any ambiguity.

The court risked constructive amendment by not tailoring the pattern jury instructions to the specifics of the case. When the indictment narrows the basis for conviction by adding specifics to an element of the crime, as it did here, the district court should adjust the pattern instructions to ensure the defendant stands to be convicted for precisely what was charged in the indictment. See *United States v. Miller*, 891 F.3d 1220, 1232 (10th Cir. 2018), citing *United States v. Ward*, 747 F.3d 1184, 1192 (9th Cir. 2014) ("[W]hen conduct necessary to satisfy an element of the offense is charged in the indictment and the government's proof at trial includes uncharged conduct that would satisfy the same element, we need some way of assuring that the jury convicted the defendant based solely on the conduct actually charged.").

Pattern jury instructions are helpful, of course, but "Pattern instructions are not intended to be used mechanically and uncritically." *United States v. Edwards*, 869 F.3d 490, 497 (7th Cir. 2017). They should be used as a starting point rather than an ending point. Where the indictment makes a particular firearm an essential element of the offense as charged, the court's jury instructions should be adjusted to include that essential element. If jury instructions are tailored to the specific charges in the indictment, constructive amendments are less likely to occur. Certainly, in Pierson's case, if the court had specified the car gun in the instructions, there would have been no constructive amendment.

### 3. *The Error Was Not "Plain"*

Under *Leichtnam*, we thus find a constructive amendment error, but that error does not call for reversal of Pierson's firearm convictions. The error was not "plain." Our precedent is unclear as to whether and when factors such as closing arguments, verdict forms, and indictment copies in deliberations can contribute to or prevent constructive amendments. Additionally, there is not a general consensus among the circuits on the effects of those factors, and the Supreme Court has not addressed them.

An error cannot be "plain" if the law is unsettled. See *United States v. Hosseini*, 679 F.3d 544, 552 (7th Cir. 2012). An error also is not "plain" if it is "subtle, arcane, debatable, or factually complicated." *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011). "For an error to be 'plain,' it must be of such an obvious nature that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *Id.*, quoting *United States v. Frady*, 456 U.S. 152, 163 (1982).

The *Leichtnam* error here was not plain. Constructive amendment doctrine seeks to prevent confusion and to ensure that a defendant stands trial for charges in the grand jury's indictment. Though the government introduced evidence of the kitchen gun and the jury instructions were not tailored, other events at trial should have made the charges against Pierson clear to the jury. The government, on six separate occasions during its closing argument and rebuttal, pointedly referred to the car gun. In two of those instances, the government made clear that the car gun was the only gun indicted. The government explained that the jury would have to determine "whether the Defendant possessed this stolen

.45-caliber handgun from his car in furtherance of his drug trafficking and whether the Defendant possessed this .45-caliber handgun while a convicted felon." The government had also made clear during opening statements that the car gun was the "subject of Counts II and III." Beyond the government's clarifications, the verdict form directed the jury's attention to Pierson's indictment, and the jury had a copy of his indictment in deliberations. In our view, these facts minimized the risk of jury confusion and at least made debatable whether a constructive amendment occurred here.

Further, the law in this area is not as settled as Pierson suggests. He points out that in dissent in *Leichtnam*, Judge Coffey argued that no constructive amendment occurred because at trial, the judge "read the firearms indictment to the jury, including the specific reference only to the [charged] Mossberg rifle." 948 F.2d at 386 (Coffey, J., concurring in part and dissenting in part) (alteration in original). In addition, Judge Coffey noted that in closing arguments, the prosecutor "discussed only the 'specific firearm alleged' in the indictment" and did not mention the other handguns introduced into evidence. *Id.* Pierson argues that the *Leichtnam* majority found a constructive amendment despite the clarifications and suggests we should do the same in his case. However, in concluding that a constructive amendment occurred in *Leichtnam*, the majority never discussed those factors. See *id.* at 374–81. The majority opinion thus provides little direct guidance on the effects of such clarifications outside of evidence and jury instructions.

Nor has the law since *Leichtnam* provided clarification sufficient to call this error "plain." No Supreme Court decision provides direct guidance for this analysis. Cases from this

circuit and others have, at times, given weight to such factors but do not provide a clear rule. See, e.g., *United States v. Cusimano*, 148 F.3d 824, 830–31 (7th Cir. 1998) (finding no constructive amendment, in part because district court instructed that defendants were on trial only for charges in indictment and provided copy of indictment to jury); *United States v. Lopez*, 6 F.3d 1281, 1288 (7th Cir. 1993) (holding that even if broadening of indictment constituted error, it was not plain error, in part because court instructed that defendants were not on trial for any conduct not alleged in indictment); see also *United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994) (holding that, though jury instructions and evidence may have broadened bases beyond indictment, no constructive amendment occurred because court instructed jury to consider only crime charged in indictment, the indictment was read to jury at beginning of trial, copy of indictment was given to jury for deliberation, and the government, in closing, mentioned only crime as indicted)*; United States v. Kuehne*, 547 F.3d 667, 683–84 (6th Cir. 2008) ("To determine whether a constructive amendment has occurred, therefore, we review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury").

Whether a constructive amendment occurred is a fact-intensive question, and the facts of Pierson's case do not lend themselves to clear application of this circuit's precedent. Though the government introduced the kitchen-gun evidence, it also made clear to the jury that it was not the gun directly at issue. Because the *Leichtnam* majority did not address what effect, if any, clarifying statements like those made by the government here should have on the constructive amendment question, we cannot say that *Leichtnam* made this error obvious. Additionally, prior cases have given at least

some weight to facts such as the verdict form and the indict-
ment being given to the jury when deciding whether or not a
constructive amendment occurred. Together, the facts in the
case make the constructive amendment issue debatable. The
error here was not "plain."

### 4. *Substantial Rights Not Affected*

Some of the same factors lead us to conclude that Pierson's
argument also fails on the third prong of plain-error review,
which requires that he show that the error affected his sub-
stantial rights. Ample evidence supported convictions on
Counts II and III. Most pertinent to the plain-error question,
the government's reminders to the jury and the phrasing of
the verdict form make it unlikely that Pierson's substantial
rights were affected.

Our circuit uses a fairly low threshold for constructive
amendment, as *Leichtnam* shows, but when applying plain-er-
ror review, we balance that approach with a relatively de-
manding approach to prejudice. The Supreme Court has not
clarified whether "affecting substantial rights" always re-
quires a showing of prejudice, but "the law in this circuit is
clear. In the context of plain error review, the amendment
must constitute 'a mistake so serious that but for it the [de-
fendant] probably would have been acquitted' in order for us
to reverse. In other words, the constructive amendment must
be prejudicial." *United States v. Remsza*, 77 F.3d 1039, 1044 (7th
Cir. 1996) (finding no plain error), quoting *United States v.
Gunning*, 984 F.2d 1476, 1482 (7th Cir. 1993) (alteration in orig-
inal).

Pierson urges us to reconsider the *Remsza* standard. First,
he suggests that we should not require any showing of

prejudice in cases of constructive amendment. He cites *United States v. Pedigo*, 12 F.3d 618 (7th Cir. 1993), where the indictment was written so that the jury could not properly have convicted the defendant on Count III based on co-conspirator liability outlined in Count I. See *id.* at 631. Nonetheless, "the prosecutor argued, and the court instructed the trial jury, that the jury could do just that." *Id.* Finding a constructive amendment, we said that a broadening of the indictment was reversible *per se*. See *id.* at 631 ("Therefore, if an amendment occurred, the plain error standard of review will not save the conviction.").

Though *Pedigo* has not been overruled expressly, our cases applying the *Olano* plain-error standard since then have made clear that its *per se* approach does not apply in plain-error review, and we will not return to it here. See *United States v. Duran*, 407 F.3d 828, 843 (7th Cir. 2005) (expressly rejecting *Pedigo*: "*Pedigo* is not the current law of this circuit. This court has explained that when, as here, the indictment is broadened based on non-specific jury instructions and when there was no objection to those jury instructions at trial, plain error review is appropriate."). We take instruction from *Olano* and now require the defendant to show that the constructive amendment was prejudicial. See 507 U.S. at 742–43 (Kennedy, J., concurring) ("Rule 52(b) does not permit a party to withhold an objection … and then to demand automatic reversal").

Second, Pierson argues that the *Remsza* prejudice standard conflicts with cases from other circuits. There is not, however, a consensus among the circuits on the appropriate standard in constructive amendment cases. Some circuits presume that constructive amendments are prejudicial. See *United States v.*

*Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) ("A constructive amendment is a *per se* prejudicial violation of the Grand Jury Clause of the Constitution."); *United States v. Floresca*, 38 F.3d 706, 713 (4th Cir. 1994) ("a constructive amendment always 'affects substantial rights'). The Third Circuit applies a rebuttable presumption that constructive amendments are prejudicial and places the burden of showing no prejudice on the government. See *United States v. Syme*, 276 F.3d 131, 154 (3d Cir. 2002). Other circuits require the defendant to show prejudice, but some demand less of a showing than we do under *Remsza*. See *United States v. Madden*, 733 F.3d 1314, 1323 (11th Cir. 2013) (finding that defendant was prejudiced by constructive amendment because court could not conclude "'with certainty' that with the constructive amendment, [defendant] was convicted solely on the charge made in the indictment"); *United States v. Miller*, 891 F.3d 1220, 1237 (10th Cir. 2018) (requiring defendant to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different[,]" and clarifying that "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and not a requirement that defendant prove by preponderance of the evidence that, but for the error, the outcome would have been different). The Eighth Circuit applies a standard similar to ours in *Remsza*. *United States v. Gavin*, 583 F.3d 542, 547 (8th Cir. 2009) (holding constructive amendment did not affect defendant's substantial rights because there was "no reasonable probability Gavin would have been acquitted under the correct jury instruction"). Our standard for determining if substantial rights were affected by a constructive amendment without objection sets a high bar for reversal on plain-error review.

We found only one case in which a constructive amendment (without objection) amounted to a plain error affecting a defendant's substantial rights. In *United States v. Ramirez*, 182 F.3d 544, 545–46 (7th Cir. 1999), as part of a reverse-sting operation, police saw the defendant load large quantities of marijuana into a vehicle and drive away. Officers stopped him and searched the vehicle. They found a loaded revolver and the marijuana. One count in the indictment charged Ramirez with carrying a firearm "in relation to the crime of knowing and intentional unlawful distribution of marijuana." At the end of the trial, however, the court instructed the jury that the defendant could be convicted if the government proved that he "knowingly carried a firearm during and in relation to a 'drug trafficking crime.'" *Id.* The court defined "drug trafficking crime" in a way that allowed the jury to convict for crimes outside of those specified in the indictment, including carrying a firearm in relation to *possession with intent to distribute*. The jury found Ramirez guilty.

Ramirez did not object, so we applied plain-error review. See 182 F.3d at 547–48. There was no evidence that Ramirez actually distributed the marijuana, which was essential to convict him, as charged, of carrying a firearm *in relation to the distribution of the drug*. *Id.* at 547. At most, the evidence showed that the defendant carried the firearm in relation to the crime of possession *with the intent to distribute*. *Id.* "Only through the constructive amendment of the indictment to include those other drug trafficking crimes as potential predicate offenses was the jury supplied with a basis to convict Ramirez on [Count III]." *Id.* at 548. Applying the *Remsza* standard, we reversed the conviction on that charge: "but for the constructive amendment, a reasonable jury would have acquitted [defendant] on the firearms charge." *Id.*

In this case, by contrast, we are confident that if no constructive amendment had occurred, the verdict would have been the same. Strong evidence showed that Pierson possessed the car gun and that his possession of that gun was in furtherance of a drug trafficking crime. See *Remsza*, 77 F.3d at 1044 (finding defendant not prejudiced by constructive amendment because testimony provided compelling proof that defendant committed the indicted crime and there was no indication that, but for the constructive amendment, the jury would have reached a different result); see also *Duran*, 407 F.3d at 843–44 (finding no prejudice; an "abundance of evidence" proved that specified gun was possessed in furtherance of drug-trafficking conspiracy as alleged in indictment).

Pierson's ownership of the Malibu, where the charged gun was found, was uncontested. Additionally, the government presented strong evidence to prove Pierson possessed the car gun in furtherance of the drug trafficking charged in Count I. Officers recounted Pierson's activities before the search, which appeared to be a drug deal. The white bag that Pierson carried from the car to the apartment contained distribution quantities of several drugs. Officers testified that drug traffickers often keep weapons in center console voids and larger stashes of drugs in the trunk, just as Pierson did.[4]

---

[4] All of this testimony aligns with the often-applied theory that firearms can further drug trafficking by providing protection to the dealer, his stash, or his territory. See *Duran*, 407 F.3d at 840. The government's evidence satisfied many of the factors relevant to whether a gun is used in furtherance of drug trafficking: (1) the type of drug activity conducted; (2) accessibility of the weapon; (3) the type of weapon; (4) whether the weapon was stolen; (5) whether possession of that weapon is legal or illegal; (6) whether the firearm was loaded; (7) the proximity of the weapon to the drugs; and (8) the time and circumstances in which the weapon was

In addition to the ample evidence, as noted, the government's closing argument told the jury clearly to focus on the car gun, and the verdict form framed the questions for each offense "as described in the Indictment," and the jury had a copy of the indictment during deliberations. With all of these factors working to counter the possibility of a conviction outside the terms of the indictment, we see no prejudice that would authorize an appellate court to find a reversible plain error in the absence of a timely objection in the district court. See *Olano*, 507 U.S. at 741 (where conceded error did not affect substantial rights, court of appeals had no authority to correct it).[5]

B.  *Apprendi Issue*

Pierson also asserts that his mandatory life sentence should be vacated and remanded for resentencing because it was based on two prior felony drug convictions that were not submitted to the jury for finding. He cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), to support his argument. Together, those two cases

---

found. See *id.*, citing *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000), *modified on denial of rehearing*, 226 F.3d 651 (5th Cir. 2000).

[5] Because the error was neither "plain" nor affected Pierson's substantial rights, we do not need to address the fourth and final prong of plain-error review which grants appellate courts discretion to dismiss if the plain error also affected the fairness, integrity, and public reputation of the proceedings. Cf. *Remsza*, 77 F.3d at 1044 (stating that if the court could exercise the discretion granted by the fourth prong, it would choose not to because the evidence was so compelling); see *United States v. Hall*, 610 F.3d 727, 744 (D.C. Cir. 2010) (constructive amendment did not affect fairness, integrity, or public reputation of court proceedings; defendant never suggested he would have defended himself differently if he had known about additional theory).

require that any fact that increases the maximum or minimum statutory penalty must, if the defendant does not admit it, be submitted to the jury for a finding beyond a reasonable doubt. See *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 103. Both cases, however, continued to recognize an exception to that rule for evidence of prior convictions. See *Almendarez-Torres v. United States*, 523 U.S. 224, 234–35; 243–46 (1998) (noting danger of prejudice to defendant from submitting such evidence to jury). The defendants in *Apprendi*, 530 U.S. at 490, and *Alleyne*, 570 U.S. at 111 n.1, did not challenge the *Almendarez-Torres* exception. Also, we must note that in our experience as judges in criminal cases, we have rarely seen an accused defendant eager to inform a jury about his prior convictions. Pierson's argument is clearly foreclosed by Supreme Court precedent. The issue is preserved for possible Supreme Court review.

C.  *The First Step Act*

The First Step Act was enacted on December 21, 2018, while this case was pending on appeal. Section 401 of that Act, titled "Reduce and Restrict Enhanced Sentencing for Prior Drug Felonies," changed the mandatory term of life imprisonment without release previously required under 21 U.S.C. § 841(b)(1)(A)(viii) to a mandatory minimum of twenty-five years. See First Step Act, Pub. L. No. 115-391, § 401(a)(2)(A)(ii).

On appeal, Pierson argues that § 401 of the First Step Act applies to him, so that his life sentence should be vacated. We disagree. Subsection § 401(c) states that the amendments in that section "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence has not been imposed as of such date of enactment." Pub. L. 115-391, § 401(c). In common usage in federal sentencing law, a

sentence is "imposed" in the district court, regardless of later appeals. See 18 U.S.C. § 3553(a) ("factors to be considered in imposing a sentence" addressed to district court); Fed. R. Crim. P. 32(b) ("The court must impose sentence without unnecessary delay."); Fed. R. Crim. P. 32 advisory committee's note to 1994 amendment (regarding duty to advise defendant of right to appeal: "the duty to advise the defendant in such cases extends only to advice on the right to appeal any sentence imposed"); 21 U.S.C. § 851(b) ("If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence … inform [defendant] that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."); Fed. R. Crim P. 32(a)(2) (1986) ("After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal …. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere.").

Any reduction in criminal penalties or in a Sentencing Guideline can pose difficult line-drawing in applying the reduction to pending cases. See generally *Dorsey v. United States*, 567 U.S. 260 (2012) (addressing application of Fair Sentencing Act of 2010 to pending cases where Act did not address problem expressly). In *Dorsey*, the Court applied the new, more lenient terms of the Fair Sentencing Act to the "post-Act sentencing of pre-Act offenders." *Id.* at 281. In the First Step Act, Congress chose language that points clearly toward that same result: the date of sentencing in the district court controls application of the new, more lenient terms.

To avoid this result, Pierson relies on a Sixth Circuit case, arguing that a sentence is not "imposed" until the case reaches final disposition in the highest reviewing court. See *United States v. Clark*, 110 F.3d 15, 17 (6th Cir. 1997), *superseded by regulation on other grounds*, U.S.S.G. §1B1.10(b)(2)(A). The Sixth Circuit was asked in *Clark* "whether § 3553(f) of the safety valve statute should be applied to cases pending on appeal when it was enacted." The legislation stated that the new safety-valve applied "to all sentences imposed on or after the date of enactment." 110 F.3d at 17, quoting Pub. L. No. 103-322, § 8001(a), 108 Stat. 1796, 1985–86 (1994). Focusing primarily on the remedial purpose of the 1994 safety-valve provision, the court held that although the statute was enacted a month after the defendant's sentence was imposed by the district court, the statute applied because "A case is not yet final when it is pending on appeal. The initial sentence has not been finally 'imposed' within the meaning of the safety valve statute[.]" *Id.*

It appears that no other circuits have applied *Clark*'s definition of "imposed" while interpreting the safety-valve statute, let alone applied it while interpreting any other statute. In view of the more common meaning of "imposed" and *Dorsey*, we respectfully decline to extend *Clark*'s reasoning to § 401(c) of the First Step Act.

Sentence was "imposed" here within the meaning of § 401(c) when the district court sentenced the defendant, regardless of whether he appealed a sentence that was consistent with applicable law at that time it was imposed. Pierson's case falls outside of § 401. His convictions and sentence are AFFIRMED.