**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2019
Decided December 6, 2019

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2843

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District <br> Court for the Southern District of Illinois. |
| *v.* | No. 3:17-cr-30001-DRH-1 |
| JASON LAUT, <br> *Defendant-Appellant*. | David R. Herndon, <br> *Judge*. |

**O R D E R**

Jason Laut, formerly a paramedic supervisor for an ambulance company, was convicted of tampering with prescription fentanyl and then covering his tracks by doctoring business records. He argues for the first time on appeal that the government's evidence on the tampering charge varied so much from the operative indictment that it amounted to an impermissible constructive amendment. He also challenges the admission of evidence suggesting he was addicted to fentanyl, which he sees as propensity-based. We affirm because Laut has not shown plain error as to the purported constructive amendment, and because he has not met his burden of showing that the evidence of addiction affected his substantial rights.

## I.

From 2013 through much of 2015, Laut was a paramedic supervisor for MedStar, an ambulance service in southern Illinois. In this role, he managed scheduling and paperwork and sometimes did paramedic duty.

Memorial Hospital supplied MedStar ambulances with narcotics that its paramedics would use to treat patients. The narcotics boxes contained specified quantities of fentanyl, morphine, and other drugs. A paper form in the box, a "Narcotics Log," was used to track all administered or wasted drugs. After paramedics used some of the narcotics in a box, they would visit the hospital, where a pharmacist would replace the box with a full one. Later, the pharmacist would examine the returned box to ensure that the remaining vials were full and unexpired, and then would restock the drugs that had been reported as used. The pharmacist would issue this restocked box to the next paramedic who needed a refill.

But things did not always go as planned. Around September 2014, a pharmacist suspected someone had tampered with vials of fentanyl, prompting Memorial to issue a fentanyl recall for all ambulances. The pharmacist had noticed pinholes in the tops of two fentanyl vials when MedStar paramedics working under Laut exchanged their narcotics box. Upon further investigation, the hospital detected tampering in 57 fentanyl vials; 54 came from MedStar ambulances. A lab test later revealed that in 52 of the 54 tampered vials from MedStar, fentanyl had been replaced with water or saline solution. Memorial began placing fentanyl back in the narcotics boxes in January 2015. Several months passed. Then, in May 2015, Laut visited Memorial to exchange a narcotics box for which the log indicated that he had administered two vials of fentanyl to patients. Consistent with that report, the box contained no fentanyl. The pharmacist on duty pulled a new narcotics box and inspected its contents. As she was checking the expiration dates, Laut commented that he had heard that tampering was happening again. The pharmacist then checked the tops of the fentanyl vials and discovered pinholes in them. She removed the vials, put two new ones in the narcotics box, and gave it to Laut. The pharmacist notified her supervisors that she had found more tampered vials, and the hospital implemented a second fentanyl recall. This recall revealed 28 tampered vials; 26 were from MedStar ambulances.

This time, Memorial further investigated the source of the tampering. It made MedStar drug-test its employees, and only Laut's test came back positive for fentanyl. The hospital also required MedStar to comply with an audit of its Trip Detail Reports (automatically generated reports tracking ambulance location), Prehospital Care

Reports (electronic forms completed by paramedics describing their treatment of patients), and Narcotics Logs. All entries in the Prehospital Care Reports were automatically coded with a time stamp and the name of the person making the entry; Narcotics Logs also required dates and paramedic signatures.

The audit revealed 91 discrepancies attributable to Laut between 2013 and 2015. These included instances where Laut reported that he had administered narcotics to patients who were not transported in his ambulance. He also had edited Prehospital Care Reports long after treatment to show that he had given narcotics to patients who had, in fact, reported that they were not in pain when they were in his care.

Federal prosecutors charged Laut with several crimes. The operative, 38-count Second Superseding Indictment included charges of wire fraud, 18 U.S.C. § 1343, making false statements, 18 U.S.C. § 1001(a), aggravated identity theft, 18 U.S.C. § 1028A(a)(1), and one count of tampering, 18 U.S.C. § 1365(a)(4). Although the tampering charge was limited to 2015, some of the cover-up counts involved Laut's conduct during the 2014 tampering incident as well.

At a pretrial conference, the district court granted the government's request to admit testimony suggesting that Laut struggled with drug addiction following a 2013 surgery. The court overruled Laut's objection that this testimony amounted to impermissible propensity evidence, reasoning that the evidence about Laut's withdrawal symptoms was relevant to his motive to steal narcotics.

At trial, the government presented extensive evidence. It painstakingly walked through the 91 discrepancies detected by Memorial's audit and presented testimony from pharmacists who discovered the tampering in September 2014 and May 2015. It also submitted evidence that Laut alone tested positive for fentanyl during the mandatory drug test, although an expert witness testified that Laut's hair sample could have been contaminated. And the government showed that investigators found empty narcotics vials and extraction tools in Laut's MedStar vehicle after it had been taken out of service and locked in a garage when Laut was suspended. Finally, friends and coworkers testified that Laut's behavior and physical appearance changed after his 2013 surgery, and that he had shaved his entire body before the mandatory, hair-based drug test.

The closing arguments and jury instructions that followed give rise to the constructive-amendment claim that Laut presses on appeal. In its closing, the government referred to evidence of fentanyl tampering in 2014 to support its contention

that the jury should convict Laut of the tampering charge in the Second Superseding Indictment—a count that cited only tampering in 2015. Specifically, the government stated that Laut had tampered with fentanyl vials "57 times in 2014, 28 times in 2015" and repeatedly referred to the "85 tampered vials." Also, when describing the 2015 tampering, the government stated that pharmacists discovered the tampered vials "after Jason Laut's tampering had already been caught once … but he got away with it."

The district court, meanwhile, did not provide a limiting instruction regarding the evidence of 2014 tampering (which was relevant to some of the cover-up charges that occurred throughout 2013 and 2014). But the court did instruct that "[t]he government must prove that the crime happened reasonably close to the dates" set forth in the Second Superseding Indictment, which was provided to the jury. And the verdict form for the tampering charge directed the jury to "Count 38 of the Second Superseding Indictment," which, again, referred only to tampering in 2015.

Laut did not object to these arguments or the jury instructions. The jury found Laut guilty on all 38 counts.

## II.

On appeal, Laut first argues that the district court erred in allowing the government to rely on evidence of 2014 tampering to support the tampering charge in the Second Superseding Indictment, which was limited to conduct that occurred in 2015. He contends that the government's use of this evidence constructively amended the operative indictment, and, therefore, that remand is required. Because Laut did not raise this issue in the district court, he concedes that we review only for plain error. *See United States v. Olano*, 507 U.S. 725, 732–37 (1993); *United States v. Pierson*, 925 F.3d 913, 919 (7th Cir. 2019).

A constructive amendment occurs when the government offers evidence or instructions from which a jury could convict a defendant of a crime different than the one charged in the indictment. *See Stirone v. United States*, 361 U.S. 212, 215–19 (1960); *Pierson*, 925 F.3d at 919–20. Whether the government's conduct adds up to a constructive amendment is a "fact-intensive question" that focuses on the trial evidence and the jury instructions. *Pierson*, 925 F.3d at 922–23. We first ask whether the evidence "created an exit ramp that might have tempted the jury to veer outside the confines of [the] indictment." *Id.* at 920. If so, then the next question is whether the court nonetheless prevented confusion by instructing the jury to limit its consideration of that evidence. *Id.*; *see also United States v. Haldorson*, 941 F.3d 284, 297 (7th Cir. 2019).

A constructive amendment, however, is plainly erroneous only "if the law at the time of appellate review shows clearly that it was an error," and if the defendant shows that allowing the amendment prejudiced the proceedings. *Pierson*, 925 F.3d at 919; *see id*. at 924; *see also Olano*, 507 U.S. at 734.

Without ruling on whether the government constructively amended the indictment here, we conclude that there was no plain error for two reasons. First, no precedent squarely addresses whether the court's provision to the jury of the indictment and a verdict form (specifying that the jury should convict based only on the actions alleged in the indictment) mitigates the potential harm from the prosecution's arguments and evidence. *See Pierson*, 925 F.3d at 922–24. Second, Laut has not borne his burden of showing that he was prejudiced. *Id*. at 924. We set "a high bar for reversal on plain-error review," and will find it only if the conviction rests on thin evidence. *See id*. at 925–26. Here we see strong evidence that Laut was doctoring Narcotics Logs and Patient Care Reports throughout 2015—not to mention the positive drug test and the discovery of empty fentanyl vials and extraction tools in his vehicle after the second fentanyl recall. Thus, we are confident that, even absent the putative constructive amendment, the jury almost certainly would have found Laut guilty of the 2015 tampering charge. *See id.* at 924–26 (observing that in the constructive-amendment context, plain error requires a showing that defendant probably would have been acquitted absent the error).

Laut next contends that the district court abused its discretion in granting the government's motion to admit evidence of his prior drug use. He argues that the government failed to identify a propensity-free chain of reasoning to support its contention that his drug use was relevant to his motive to steal fentanyl. *See United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). But at the final pretrial hearing, the government proposed that the evidence of Laut's drug addiction—that his behavior and appearance changed after his injury—offered a motive for stealing fentanyl. Specifically, he needed drugs to feed that addiction. Indeed, evidence of drug addiction can demonstrate a motive to steal prescription narcotics because it shows a desire for an "advantage to which the crime is instrumental," as opposed to just a generalized propensity toward crime. *United States v. Cunningham*, 103 F.3d 553, 556–57 (7th Cir. 1996); *see also United States v. Schmitt*, 770 F.3d 524, 534–35 (7th Cir. 2014) (applying reasoning from *Cunningham*).

Laut's related argument on this point—that the probative value of his supposed drug addiction was outweighed by its prejudicial impact—also is meritless. To be sure,

evidence is inadmissible if its probativeness is outweighed by unfair prejudice. FED. R. EVID. 403; *Gomez*, 763 F.3d at 856–57. A district court must assess that danger, taking into account "the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Gomez*, 763 F.3d at 860. Here, the district court did not directly address the topic of unfair prejudice. But even if the district court erred in its discussion, reversal would be appropriate only if admitting the drug-addiction evidence affected Laut's substantial rights. *Schmitt*, 770 F.3d at 532. Given the other evidence of Laut's crimes, and the relatively small role that the evidence of his addiction played at trial, we cannot conclude that the jury would have found the prosecution's case "significantly less persuasive" without evidence of Laut's addiction. *Id.* (quoting *United States v. Garcia–Avila*, 737 F.3d 484, 490 (7th Cir. 2013)).

For the foregoing reasons, we affirm.