In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3534

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS D. JACKSON, ALSO KNOWN AS
LITTLE D,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:17-cr-40052 — **J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED OCTOBER 8, 2019

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Dennis Jackson was convicted of
multiple drug charges and sentenced to mandatory life im-
prisonment. He appeals his convictions on the grounds that
the district court erred in allowing certain recordings and tes-
timony into evidence; he also challenges his sentence, seeking
a reduction in light of the First Step Act. For the reasons stated
below, we affirm the judgment of the district court.

## I. Background

In 2017, the Southern Illinois Drug Task Force and the Illinois State Police began investigating Jackson and some of his associates, suspecting their involvement in a gangland shooting. The investigation led to evidence suggesting that Jackson was dealing drugs in Harrisburg, Illinois. The investigating agents supplied a confidential source ("CS") with funds to make several controlled purchases from Jackson, each of which was recorded via an audiovisual device on the CS's person. After the CS completed three controlled purchases, agents obtained a warrant and raided Jackson's residence. The search turned up methamphetamine, other drugs, cash, scales, and multiple loaded firearms.

Jackson was arrested and several superseding indictments followed. He proceeded to trial on six counts: (1 & 2) distributing a mixture and substance containing methamphetamine; (3) distributing five grams or more of actual methamphetamine; (4) possessing with intent to distribute 50 grams or more of actual methamphetamine; and (5 & 6) two weapons charges. Before trial, the government filed an information establishing that Jackson had twice pleaded guilty to felony drug charges. Taking his prior convictions into account, he faced, if convicted, a mandatory minimum sentence of ten years on count 3 and life imprisonment on count 4.

As Jackson's trial approached, the CS escaped from the jail where he was being held on unrelated charges. The CS was returned to custody only two days before Jackson's trial began, and the government determined not to call him as a witness. Instead, the government filed a motion in limine seeking

a pretrial ruling on the admissibility of the recordings show-
ing the CS purchasing drugs from Jackson. The district court
granted the motion, reasoning that:

> [a]ssuming the Government lays a proper foun-
> dation, does not use the CS's statements for
> their truth, and satisfies all other evidentiary re-
> quirements, the Court will not exclude the re-
> cordings on Confrontation Clause grounds or
> any of the other ground discussed above. Fur-
> ther, it will give appropriate limiting instruc-
> tions to the jury when the recordings are played
> and at any other reasonable time requested by a
> party.

In a pretrial hearing, the district judge noted that were
Jackson convicted on count 4, a mandatory life sentence
would apply, and he would have no discretion to modify it.
Jackson stated that he understood and, contrary to his law-
yer's advice, wished to proceed to trial rather than accept a
plea bargain.

At trial, two investigators provided relevant testimony.
Special Agent Jayson Murbarger and Inspector Glenn Roun-
tree participated in the stings of Jackson; between them, they
searched the CS for contraband, cash, or weapons before each
controlled sale, provided him with cash to buy the drugs, and
affixed audiovisual recording devices on his person. Mur-
barger testified that he watched the CS during each sale and
observed him placing the purchased drugs in the agents' ve-
hicle. The agents provided similar testimony discussing the
chain of custody of physical evidence and the integrity of the
recordings made by the CS.

The recordings of the drug transactions were played for the jury over Jackson's objections. The court provided the following instructions:

> Ladies and gentlemen of the jury, the government will now present recorded conversations and video recordings. This is proper evidence that you should consider together with and in the same way you consider other evidence in this case. …

> The recordings contain statements and questions by the confidential source in this case. You may consider statements or questions of the confidential source on the recordings only to help you understand what the defendant said in response to—in response or did in reaction to those statements or questions. You may not consider the confidential source's statements or questions for the truth of what the confidential source said. The confidential source's statements and questions standing alone are not evidence of the defendant's guilt.

After the recordings played uninterrupted, Inspector Rountree testified as to what he saw and heard on the recordings.

Following a four-day trial, on July 12, 2018, a federal jury in the Southern District of Illinois found Jackson guilty of counts 1 through 4 but was unable to reach a consensus on counts 5 and 6. The government subsequently moved to dismiss counts 5 and 6 without prejudice.

On November 28, 2018, the district court entered judgment and sentenced Jackson as follows: concurrent terms of

360 months for counts 1 and 2, a concurrent term of 480 months on count 3, and a life sentence on count 4.

The President signed the First Step Act, Pub. L. 115-391, into law on December 21, 2018. One effect it has (among others) is to reduce the mandatory minimum sentences for various crimes. Section 401 of the First Step Act reduces the mandatory minimum sentence for violations of 21 U.S.C. § 841(b)(1)(A)(viii)—Jackson's count 4—from life to twenty-five years.

## II. Discussion

Jackson argues that the district court should not have admitted the CS's recordings without the CS present to testify and should not have allowed investigators to testify about the recordings. Jackson also argues that his sentence should be reduced because the First Step Act took effect shortly after his sentencing.

### A. Admitting the Recordings and Related Testimony

We review de novo whether an evidentiary ruling violates the Confrontation Clause of the Sixth Amendment and review other evidentiary rulings for abuse of discretion. *See United States v. Wright*, 651 F.3d 764, 773 (7th Cir. 2011); *United States v. Prude*, 489 F.3d 873, 878 (7th Cir. 2007).

Jackson presents three arguments against the admission of the recordings during his trial: (1) the government failed to lay the appropriate foundation before the recordings were admitted; (2) the investigators should not have been allowed to "narrate" portions of the recordings to describe their impressions; and (3) the admission of the recordings without the CS's presence and testimony violated the Confrontation Clause.

### 1. *Foundation*

Jackson contends that the government failed to lay the appropriate foundation for the recordings and the chain of custody of physical evidence because "[the CS] is the only one who could give testimony about the chain of custody of the evidence." Jackson, however, fails to challenge the extensive eyewitness testimony provided by investigators supporting the chain of custody and laying the foundation for the admission of both the recordings and physical evidence.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Jackson has not identified any meaningful lapse or flaw in the testimony authenticating the evidence entered in his trial, and he has not rebutted the investigators' eyewitness recollections. The district court did not abuse its discretion in admitting the recordings or the other evidence challenged.

### 2. *Investigators' Testimony*

Jackson briefly posits that the investigators' "narrative" testimony about the CS's recordings was inappropriate: "even if the district court correctly admitted the videos without [the CS's] presence at trial, it erred when it allowed Officer Jayson Murbarger and Officer Glen Rountree to narrate significant portions of the videos when there was a less prejudicial means to present the same evidence–namely the testimony of [the CS]." Jackson does not identify any specific testimony as "prejudicial," let alone unfairly prejudicial, *see* Fed. R. Evid. 403, so the argument fails.

### 3. *Confrontation Clause*

Jackson further asserts that "[t]he district court erred when it allowed the government to introduce videos made by the [CS] as evidence without requiring him to testify," arguing that this decision violated his Sixth Amendment right of confrontation and is contrary to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).

Generally, "in the context of the admission of testimonial hearsay in criminal trials, the Sixth Amendment's Confrontation Clause bars the admission of such testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." *United States v. Foster*, 701 F.3d 1142, 1150 (7th Cir. 2012) (citation and internal quotation marks omitted). The Confrontation Clause applies to both in-court and out-of-court statements. *Crawford*, 541 U.S. at 50–51. According to Jackson, the recordings constituted out-of-court testimonial statements and should not have been admitted, as the CS was in government custody and Jackson never had the opportunity to cross-examine him. Jackson ignores, however, that not all out-of-court testimonial statements implicate the Confrontation Clause.

*Crawford* reiterated the longstanding principle that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9. Jackson has not identified any statement made by the CS on the recordings that was being offered for the truth of the matter asserted. Indeed, Jackson fails to challenge *any* specific statement of the CS; instead, he objects to the admission of the recordings as a whole. The district court allowed the recordings into evidence on the ground that the CS's words were not being offered for the

truth of the matter asserted or any inappropriate purpose and noted that Jackson had not identified any statement where the CS "put words into Jackson's mouth."

On appeal, Jackson still has not pointed to any statement admitted for any purpose beyond adding context to Jackson's own statements. "The admission of recorded conversations between informants and defendants is permissible where an informant's statements provide context for the defendant's own admissions. [S]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth." *Foster*, 701 F.3d at 1150 (citation and internal quotation marks omitted).

The district court's use of a limiting instruction (telling the jury that the CS's statements could not be considered for their truth, but only to provide context to Jackson's own statements), further supports the propriety of the recordings' admission. *Id.* at 1152 (noting that a district court's limiting instruction was relevant to its determination that the Confrontation Clause was not violated: "[T]he jury was provided with instructions by the court indicating that the CI's recorded statements were not to be considered for the truth of the matter asserted, but instead only to provide context for the defendant's admissions.").

*United States v. Gaytan* is instructive. 649 F.3d 573 (7th Cir. 2011). There, we held that "the district court properly admitted [the CS's] out-of-court statements—not for their truth but to contextualize Gaytan's own statements without putting words in his mouth. There was no Confrontation Clause violation." *Id.* at 580. The *Gaytan* district court had provided limiting instructions to the jury: "The confidential informant's

statements are offered only to provide context for the defendant's statements, and are not to be considered for the truth of the matters asserted."

At oral argument, counsel for Jackson attempted to distinguish *Gaytan* from this case, noting that in Jackson's case the judge instructed the jury that "[t]he confidential source's statements and questions *standing alone* are not evidence of the defendant's guilt" (emphasis added). Jackson's counsel argued that the use of the phrase "standing alone" materially differed from the instructions in *Gaytan* because it implicitly invited the jury to consider the CS's statements as evidence when viewed in conjunction with *other* evidence.[1] This constitutes mere semantics. The trial court's instruction stated a logical corollary of what we have already determined is an acceptable use of a CS's out-of-court statements: to provide context to the defendant's own statements.

As Jackson has not singled out any statement of the CS offered for the truth of the matter asserted, and because the district court provided an appropriate limiting instruction to the jury, there are no grounds to hold that Jackson's right to confrontation was violated.

### B. First Step Act

We review questions of law affecting sentencing de novo, *Foster*, 701 F.3d at 1156, and review a sentence's reasonableness for abuse of discretion, *United States v. Vizcarra*, 668 F.3d 516, 527 (7th Cir. 2012).

Jackson challenges his mandatory life sentence on count 4, arguing that the passage of the First Step Act a mere twenty-

---

[1] Jackson had not made this argument in briefing.

five days after his sentencing retroactively made the life sentence unjust, pointing out that "the trial judge stated on the record 'my hands as a judge are tied as to what your sentence should be.'" Jackson's appeal of this issue is unavailing.

We recently held that the First Step Act is not retroactive: it only applies to sentences imposed after its execution. In *United States v. Pierson*, as in this case, the First Step Act followed the defendant's sentencing while the case was still on appeal. 925 F.3d 913, 927 (7th Cir. 2019). Pierson, like Jackson, received a mandatory life sentence for violating 21 U.S.C. § 841(b)(1)(A)(viii). Similarly, Pierson argued that the First Step Act's reduction of the mandatory minimum sentence from life to twenty-five years should apply to him.

We disagreed, noting that the First Step Act only applies to sentences "imposed" after its execution, and holding that the imposition of a sentence occurs on the date of sentencing in the trial court itself (not, as Pierson maintained, after an appeal's resolution): "Any reduction in criminal penalties or in a Sentencing Guideline can pose difficult line-drawing in applying the reduction to pending cases. … In the First Step Act, Congress chose language that points clearly toward [the result that] the date of sentencing in the district court controls application of the new, more lenient terms." *Id.* at 927–28.

Here, as in *Pierson*, the sentence was imposed "when the district court sentenced the defendant, regardless of whether he appealed a sentence that was consistent with applicable law at that time it was imposed." *Id.* at 928. Therefore, the First Step Act does not apply to Jackson's sentence, imposed prior to the Act, meaning the Act cannot justify a reduction.

Additionally, the district judge's pretrial statement that his hands were tied in relation to a mandatory life sentence on count 4 does not support vacating Jackson's sentence; in fact, the entire colloquy shows Jackson accepting the risk of such a sentence in proceeding to trial. The colloquy occurred immediately before trial, and in it the judge described to Jackson the effect of the government's information establishing Jackson's prior drug convictions:

> THE COURT: Mr. Sims, have you had a chance to review the second 851 enhancement that's been filed and to talk with your client about the impact it would have on Count 4 in the event the jury finds Mr. Jackson guilty of Count 4? Did you relay to him, as I did, that he'd be looking at mandatory life imprisonment?
>
> DEFENSE COUNSEL: Yes, Your Honor, I did.
>
> THE COURT: And no parole in the federal system. You understand that, Mr. Jackson?
>
> THE DEFENDANT: Yes, I do.
>
> DEFENSE COUNSEL: Yes, Your Honor, and against my advice, my client has elected to go to trial.
>
> THE COURT: Is that correct, Mr. Jackson?
>
> THE DEFENDANT: Yes, it is, Your Honor.
>
> THE COURT: Now, you understand that if you go to trial and if you're found guilty of Count 4, that my hands as a judge are tied as to what your sentence would be? You understand that?
>
> THE DEFENDANT: Yes, I do, Your Honor.

Contrary to Jackson's claims, the judge's statement that his "hands as a judge are tied" does not demonstrate that such a sentence was unjust. In context, the judge was warning Jackson about the potential consequences of proceeding to trial, and explicitly making clear to Jackson that he would have to sentence Jackson to life were he found guilty on count 4. Jackson has provided no authority to support the proposition that a judge describing mandatory sentences in a pretrial hearing indicates an unreasonable punishment.

Finally, Jackson's mandatory life sentence is not unreasonable as it was within the Guidelines range at the time of sentencing. "A sentence within a properly calculated guidelines range is presumed to be reasonable; it is the defendant's burden to overcome the appellate presumption." *Vizcarra*, 668 F.3d at 527. Jackson insists that the passage of the First Step Act shows that the government knew the mandatory life sentence on count 4 was unfair. While the Act demonstrates that Congress wished to revise certain mandatory minimum sentences, it does not follow that Congress intended to brand sentences carried out under the prior framework as unreasonable.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.