In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2092

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

HECTOR URIARTE,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cr-00332-3 — **Joan B. Gottschall**, *Judge*.

ARGUED MAY 13, 2020 — DECIDED SEPTEMBER 15, 2020*

---

* A disagreement between the panel assigned in this case and the panel assigned in *United States v. Bethany*, 19-1754, on the interpretation of the First Step Act was submitted to the entire court pursuant to Circuit Rule 40(e). The members of the court in regular active service determined that en banc consideration was appropriate. The en banc court, including a senior circuit judge assigned to the panels in both cases, then determined that, because the arguments were ably set forth in the parties' briefs and arguments before the panels, additional oral argument before the en banc court would be an inefficient use of judicial resources. Accordingly, the case was taken under advisement by the en banc court on the briefs and oral arguments submitted to the panels.

_____

Before SYKES, *Chief Judge*, and FLAUM, EASTERBROOK, RIPPLE, KANNE, ROVNER, WOOD, HAMILTON, BARRETT, BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Section 403 of the First Step Act of 2018 amended the mandatory minimum sentence for certain firearm offenses. Although sentencing reform is generally prospective, Congress specifically mandated that these amendments were to apply to an offense committed before enactment "if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (codified at 18 U.S.C. § 924 note). We vacated, on unrelated grounds, Hector Uriarte's initial sentence before the enactment of the First Step Act. *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016). At resentencing, the district court ruled that he was entitled to be sentenced under the provisions of the Act. We agree with the district court and therefore affirm its judgment.

## I

## BACKGROUND

Hector Uriarte was a member of a gang that conspired to kidnap and rob drug dealers for money and drugs. He was indicted for, and convicted of, several federal offenses, including racketeering, drug crimes, and two counts of using a firearm to commit a kidnapping in violation of 18 U.S.C. § 924(c). A conviction for a single count of using a firearm to commit a crime of violence like kidnapping carries a mandatory minimum penalty of five years' imprisonment.

*Id.* § 924(c)(1)(A)(i). That mandatory minimum is elevated to seven years if the firearm was "brandished" during the course of the crime. *Id.* § 924(c)(1)(A)(ii).

Before the First Step Act, a second violation of § 924(c) triggered a much higher 25-year mandatory minimum, *even if the two counts were asserted in a single indictment.* The First Step Act amended § 924(c) so that only a second § 924(c) violation committed after a prior *conviction* for the same offense will trigger the 25-year minimum. First Step Act § 403(a); *see United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019).

At the time of Mr. Uriarte's sentencing in 2013, the district court calculated that he was subject to a mandatory minimum of 42 years' imprisonment: 10 years from the various racketeering and drug charges, 7 years for the first firearm offense because the court determined that it had involved brandishing a weapon, and 25 years for the second firearm offense. The court sentenced Mr. Uriarte to 50 years in prison, a sentence above the mandatory minimum but well below the Guidelines recommendation.

Along with several codefendants, Mr. Uriarte appealed his convictions and sentence. *Cardena*, 842 F.3d 959. Among other arguments, we reviewed a challenge to his sentence based on the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013). *Alleyne* held that brandishing is an element of the § 924(c) offense that must be found by a jury. In Mr. Uriarte's case, the court rather than the jury had found the element of brandishing. *Cardena*, 842 F.3d at 1000–02. We therefore vacated his sentence and remanded so that

Mr. Uriarte could be resentenced without the brandishing enhancement for the first firearm offense.[1]

At the time of the enactment of the First Step Act, Mr. Uriarte was a convicted, but unsentenced, federal defendant. When the time for his sentencing arrived, he asked the district court to apply § 403 of the Act. The court agreed, and over the Government's objection, it sentenced him under the provisions of the First Step Act. As Mr. Uriarte's second firearm offense no longer triggered a 25-year mandatory minimum, the court sentenced him to 20

---

[1] Specifically, in *United States v. Cardena*, we concluded that, in light of *Alleyne v. United States*, 570 U.S. 99, 103 (2013), Mr. Uriarte was "improperly subjected to a 7-year mandatory minimum on count 8 for brandishing a firearm where the jury only convicted [him] of using or carrying a firearm." 842 F.3d 959, 1000 (7th Cir. 2016). We explained that, when sentencing Mr. Uriarte, "the district court departed downward from life to 18 years and then imposed the consecutive 7-year and 25-year mandatory minimums, for a total term of 50 years' imprisonment. Because the mandatory minimum of 7 years went into the district court's determination of [Mr. Uriarte's] ultimate sentence[], we cannot say that the *Alleyne* error was harmless." *Id.* at 1001.

We further noted that the case was "unusual because it is not often that the guidelines range is only life imprisonment." *Id.* Thus, in order to identify "a lower bracket for purposes of deciding what sentence to give" Mr. Uriarte, the district court "treat[ed] the mandatory minimum" as that "lower bracket." *Id.* at 1001–02. The Government had argued in *Cardena* that the *Alleyne* error "'had absolutely no effect'" on the district court's calculation of Mr. Uriarte's sentence because the sentence was "above the mandatory minimum." *Id.* at 1001 (citation omitted). We rejected this argument because the district court had "in effect" used the mandatory minimum as the starting point in its calculation. *Id.* at 1001. We held that Mr. Uriarte was therefore "entitled to resentencing." *Id.* at 1002.

years' imprisonment based on its recalculation of the mandatory minimum: 10 years for the various drug and racketeering offenses, 5 years for the first firearm offense without the brandishing enhancement, and 5 years for the second firearm offense.[2] The Government now appeals Mr. Uriarte's new sentence.

---

[2] The actions of both the district court and the parties reflect the understanding that our remand in *Cardena* was for a plenary resentencing. Our instructions in *Cardena*, read in light of our settled law, make clear that the remand was for a full, or plenary, resentencing.

As a general matter, we have distinguished three types of remand. *United States v. Simms*, 721 F.3d 850, 852 (7th Cir. 2013). The two more limited remands are (1) those in which "the appellate court seeks a ruling or advice from the trial court and[,] pending its receipt of that ruling or advice[,] retains jurisdiction over the appeal," and (2) those in which "the appellate court returns the case to the trial court but with instructions to make a ruling or other determination on a specific issue or issues *and do nothing else*." *Id.* (emphasis added). *Cardena* does not implicate either of these limited remands.

In the third and "most common form of remand," the "general remand[,] the appellate court returns the case to the trial court for further proceedings consistent with the appellate court's decision, but consistency with that decision is the only limitation imposed by the appellate court." *Id.* Moreover, we have noted that, when we disturb one aspect of a sentencing package, our preference is for a full resentencing:

> Because a criminal sentence is normally a package that includes several component parts (term of imprisonment, fine, restitution, special assessment, supervised release), when one part of the package is disturbed, we prefer to give the district court the opportunity to reconsider the sentence as a whole so as to "effectuate its sentencing intent." *Pepper v. United States*, 562 U.S. 476, 507 (2011). Vacating the sentence

(continued … )

( … continued)

> and returning the case to the district court for imposition of a new sentence allows the district court to "reconfigure the sentencing plan" so as to "satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Id*.

*United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016).

"[I]t is possible in some cases for us to reverse and remand on certain issues and yet not unbundle the package." *United States v. Smith*, 103 F.3d 531, 534 (7th Cir. 1996). "In other cases," however, "our action may likely undermine the entire sentencing intent of the district judge. In the latter cases, full resentencing is appropriate." *Id.*

Both the language that we employed in our *Cardena* remand, and the nature of the error that formed the basis of Mr. Uriarte's initial sentencing, point clearly to the conclusion that our remand required plenary resentencing. In *Cardena*, we stated: "We VACATE the sentence[] of … Hector Uriarte on count 8 and REMAND for resentencing consistent with this opinion." 842 F.3d at 1002. This broad language mandates a complete resentencing. *See United States v. Young*, 66 F.3d 830, 836 (7th Cir. 1995) (stating that the language, "'[w]e therefore vacate the district court's sentence and remand the case for resentencing consistent with this opinion'" was "broad," and that the language, we "'vacate[] and the case [is] remanded for resentencing *on the issue of obstruction of justice*'" was "limited" (emphasis added)). Additionally, the district court had structured Mr. Uriarte's sentence on the basis of an *Alleyne* error, and we determined that it was impossible to "unbundle" this error from the rest of his sentence. *Cardena*, 842 F.3d at 1001–02 (noting that the district court used the mandatory minimum as the starting point of its calculation); *see also United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005) ("We recognize that in a sentencing determination potential enhancements are inter-connected and the district court's original sentencing intent may be undermined by altering one portion of the calculus."); *cf. Pepper*, 562 U.S. at 507) ("[A]n appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence.'" (quoting *Greenlaw v. United States*, 554 U.S. 237, 253

(continued … )

## II

## DISCUSSION

### A.

Mr. Uriarte's case presents a straightforward factual situation and an equally straightforward legal issue for our resolution.

At the time of the enactment of the First Step Act, Mr. Uriarte was a convicted, but unsentenced, federal defendant. He was awaiting sentencing. An earlier sentencing proceeding, conducted before the enactment of the First Step Act, had resulted in a sentence that we decided could not stand. We vacated that sentence, rendering it a nullity, and directed the district court to resentence Mr. Uriarte. *See Cardena*, 842 F.3d at 1000–02; *Pepper v. United States*, 562 U.S. 476, 508 (2011) (Vacatur "wipe[s] the slate clean."); *United States v. Barnes*, 948 F.2d 325, 330 (7th Cir. 1991) ("[T]he effect of the order to vacate was to nullify [Mr. Uriarte's] sentence."). While Mr. Uriarte was awaiting sentencing, Congress enacted the First Step Act.

The Act's language is also quite simple. Congress amended the law so that contemporaneous § 924(c) convictions no longer trigger a 25-year mandatory minimum sentence. First Step Act of 2018, § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5221–5222 (Dec. 21, 2018). The cases to which the amendment applies are set forth in § 403(b), which states:

---

( … continued)
(2008))). Thus, our remand in *Cardena* required that the district court conduct a plenary resentencing.

APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

When Congress drafted this language, it departed explicitly from the usual rule that criminal sentencing statutes are applicable only to crimes committed after the effective date of the statute. *See Dorsey v. United States*, 567 U.S. 260, 272–73 (2012) (explaining the default rule that, pursuant to the federal saving statute, 1 U.S.C. § 109, the reduced penalties of a criminal statutory amendment are generally not applicable to offenses committed before the statute was enacted).

Congress thereby ensured that all individuals awaiting sentencing in the United States courts on the effective date of the Act would be sentenced in accord with the policy decisions it had just made. To accomplish this goal, Congress made no distinction between defendants who had never been sentenced and those whose sentence had been vacated fully and who were awaiting the imposition of a new sentence. In this way, Congress stanched, to the degree that it could without overturning valid and settled sentences, the *mortmain* effect of sentencing policies that it considered no longer in the Nation's best interest. It ensured, moreover, all persons awaiting sentencing on the effective date of the Act would be treated equally, a value long cherished in our law. *Id.* at 276–77.

This interpretation is both straightforward and compatible with the purpose of the First Step Act. We begin

with the language at issue here: "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b). Congress writes statutes against the backdrop of the existing legal landscape. The Supreme Court has reminded us that our "elected representatives, like other citizens, know the law." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979). When Congress crafted this statutory language, it well understood that vacating a sentence "wipe[s] the slate clean." *Pepper*, 562 U.S. at 508; *see also United States v. Mobley*, 833 F.3d 797, 802 (7th Cir. 2016) ("When we vacate a sentence and order a full remand, the defendant has a 'clean' slate—that is, there is no sentence until the district court imposes a new one."). We presume that Congress is aware of the established meaning of legal terms. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) ("Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.").

Here, Congress has not given any indication that it intended to depart from settled principles. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Therefore, we read § 403(b) against the background principle that a court resentences "on a clean slate." *Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016). Nothing in the text of the statute suggests that Congress intended to create an exception to the ordinary effect of the vacatur of a sentence. Indeed, it is clear that the statute reflects a congressional intention that its policy decision apply to both pre-Act offenders who have never been sentenced and to pre-Act offenders whose sentences had been vacated before the date

of enactment, but who had not been resentenced as of that date.[3]

Whether an unsentenced defendant falls into one group or the other, he lacks a sentence. The statutory language makes clear that, on sentencing day, both should be treated under the same congressional policy.

**B.**

Despite this straightforward application of the text, which is compatible with the statute's manifest remedial purpose, it is possible, to borrow a phrase from Lewis Carroll, to take select words of the statute and "pay them extra"[4] to come up with a plausible alternative reading. This approach introduces a significant amount of ambiguity and internal contradiction into the basic interpretative inquiry. Let us see why this alternative approach falls on its own sword.

We could take the phrase "a sentence … has not been imposed," § 403(b), and read it—as the Government proposes—as referring to the sentence that we held null and

---

[3] Although Mr. Uriarte, who was sentence-less when the First Step Act was enacted, falls neatly within the statute's language, the same would not be true for a defendant who was under a sentence at the time of enactment, but subsequently had his sentence vacated. Nevertheless, that scenario is not before us.

[4] Lewis Carroll, *Through a Looking-Glass and What Alice Found There* 133 (Boston, Thomas Y. Crowell & Co. 1893) ("'When I make a word do a lot of work like that,' said Humpty Dumpty, 'I always pay it extra.'"). When applying plain-meaning methodology, one should not have to pay words extra.

void long before the enactment of the First Step Act. The first issue with this approach is that it would require, of course, that we read this statutory phrase solely through an historical lens and pay no attention at all to a "legal lens." But, as we already have explained, Congress writes statutes against the background of existing law, and nothing in the statutory language suggests that Congress meant to abandon its usual course of legislating in light of existing law.

We also could pay the words of the statute a great deal extra by departing completely from the text and invoking our own policy preferences. In *United States v. Hodge*, the Third Circuit, after deciding that the defendant had not been granted a full resentencing, wrote in pure *dicta* that "drawing the line at initial-sentence imposition is preferable to drawing the line at ultimate-sentence imposition. If we let all defendants awaiting resentencing capitalize on the First Step Act, we would favor defendants whose appeals—for whatever reason—took longer to resolve." 948 F.3d 160, 164 (3d Cir. 2020).

Preferable? To whom? Neither the Third Circuit nor the Seventh Circuit has the prerogative of policy choice in this matter. As the Supreme Court noted in *Dorsey*, and as we noted in *Pierson, any* reduction of criminal penalties will involve difficult line drawing with respect to pending cases. *Dorsey*, 567 U.S. at 280; *United States v. Pierson*, 925 F.3d 913, 927 (7th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 1291 (2020). Here, Congress, attempting to cure what it saw as an inappropriate sentencing structure, determined that its revision should control any situation where a district court still had to impose a sentence. Considering that Congress had determined that the earlier sentencing structure resulted

in sentences that were too long and unfair, it is difficult to fault Congress for ensuring that those sentences would not be imposed on defendants yet to be sentenced. It wanted the unfair practice stopped upon enactment. Period.

Nor should we ignore the Supreme Court's discussion in *Dorsey* that Congress generally tries to avoid "radically different sentences" for individuals "who each engaged in the same criminal conduct … *and were sentenced at the same time*." *Dorsey*, 567 U.S. at 276–77 (emphasis added).

There is no reason to think that Congress excluded from its remedy pre-Act offenders facing plenary resentencing. Pre-Act offenders whose sentences have been vacated are similarly situated to individuals who have never been sentenced. The text of the Act is silent as to any intent of Congress to inflict on them the exact harsh and expensive mandatory minimum sentences that § 403 restricts and reduces. That result would be fundamentally at odds with the First Step Act's ameliorative nature. When "construing a statute, courts ought not deprive it of the obvious meaning intended by Congress, nor abandon common sense." *United States v. Bhutani*, 266 F.3d 661, 666 (7th Cir. 2001) (citation omitted).

If we are striving to pay the text extra, there is one more argument that we might tease out of the text. We could rest on the fact that the statute turns on the imposition of "*a* sentence," not "*the* sentence," "the final sentence," or "a sentence that continues to legally bind the defendant." According to this argument, because "a" is an indefinite article, it "points to a nonspecific object, thing, or person that

is not distinguished from the other members of a class."[5] Therefore, the argument goes, the phrase "a sentence" refers to the long-ago vacated sentence rather than the sentence to be imposed by the sentencing court in the future.

To make this one-letter article support the weight of a "plain meaning" argument, we would have to pay it much more than a little extra. The Government draws significance from the fact that, if Congress had intended § 403 to apply to cases which had not reached a final disposition, "it easily could have"[6] employed language such as "the final sentence" or "a sentence that continues to legally bind the defendant." By the same token, however, one could draw significance from the fact that Congress did not use the words "*an original* sentence" or "*an initial* sentence." Congress did not qualify the terms of the statute because it clearly applied to *all* defendants awaiting a valid sentence at the time of its enactment. The Government's reading places great weight on a single article, "a." Yet the text of the First Step Act gives reason to doubt that the word "a" was intended to carry such import. Had Congress intended the phrase "a sentence" to convey a very broad meaning, it could have used the word "any," as it did earlier in the same sentence: "This section … shall apply to *any* offense … if a sentence … has not been imposed … ." § 403(b) (emphasis added).

---

[5] Bryan A. Garner, Garner's Modern English Usage 991 (4th ed. 2016).

[6] Appellee's Br. 16.

Further, the surrounding text of the statute indicates that Congress intended § 403 to apply to all defendants awaiting sentence at the time of its enactment. Courts have "long refused to construe words 'in a vacuum.'" *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)). "[R]easonable statutory interpretation must account for both 'the specific context in which … language is used' and 'the broader context of the statute as a whole.'" *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Section 403 is distinctive in that it contains a provision that specifically addresses its application to pending cases. Congress took great care to ensure that defendants who had been convicted but not sentenced would not be denied the benefits of § 403. Congress made crystal clear that § 403 reaches *all* defendants whose sentences had not been imposed before enactment—even those who had been convicted before the Act. The text gives us no reason to believe that Congress excluded from this expansive reach certain defendants awaiting sentencing just because those defendants previously had received invalid sentences.

Paying extra to rely on this argument is a poor deal indeed.[7]

---

[7] Because the plain language of the statute requires reversal of the district court's judgment, we need not address the rule of lenity. However, if both readings render the text ambiguous, the rule of lenity favors the interpretation set forth in this opinion. *United States v. Bass*, 404 U.S. 336, 348 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.").

Just as we could pay the words of the statute extra to support a meaning other than the obvious one, we could also enlist our own precedent and "pay it extra" by forcing the precedent to spread its dominion into unintended fields. We could say, as the Government requests, that our recent opinion in *Pierson*, 925 F.3d 913, is consistent with employing an exclusively historical lens to the Act's use of the word "imposed." The Government's argument relies heavily on our statement in *Pierson* that, "[i]n common usage in federal sentencing, a sentence is 'imposed' in the district court, regardless of later appeals." *Id.* at 927.

To use *Pierson* as a weight-bearing pillar, we would have to pay it a great deal extra. *Pierson* addressed an entirely different question. Pierson appealed his original sentence and, while his appeal was pending, the First Step Act became effective. We held, correctly, that because Pierson had a sentence in place at the time of the Act's enactment, the Act did not apply to him. Pierson's situation gave us no cause to consider whether plenary resentencing awaited Pierson in the future.

Moreover, the language from *Pierson*, "regardless of later appeals," 925 F.3d at 927, has never been construed to apply to defendants whose sentences were vacated. Other cases that have relied upon *Pierson* for this principle have involved a defendant either directly appealing his sentence or seeking a reduction of a sentence that was imposed long before the Act's enactment.[8] In *Pierson*, we held that "the Act cannot

---

[8] *See United States v. Gonzalez*, 949 F.3d 30, 42–43 (1st Cir. 2020), *petition for cert. filed* (U.S. June 22, 2020) (No. 19-8783); *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) ("Congress did not refer to 'finality,' and

(continued … )

justify a reduction" to a sentence that was imposed prior to the Act. *United States v. Jackson*, 940 F.3d 347, 353 (7th Cir. 2019). *Pierson* did not address the situation here: whether the Act applies to a defendant who was not subject to a sentence when the Act became effective.

*Pierson* is consistent with Congress's intent not to reopen *finished* proceedings because of the change in the law effected by the First Step Act. In choosing not to write § 403(b) to allow reductions to valid sentences that already had been imposed, Congress expressed a policy preference in favor of settled expectations and ease of administration. Nevertheless, in crafting clarifying legislation—in attempting to "set things right"—Congress naturally wanted to reach all cases where there was not already a sentence in

( … continued)

imposition and finality are two different concepts."); *United States v. Jordan*, 952 F.3d 160, 171–72 (4th Cir. 2020), *petition for cert. filed* (U.S. Sept. 1, 2020); *United States v. Richardson*, 948 F.3d 733, 748–50 (6th Cir. 2020), *petition for cert. filed* (U.S. July 1, 2020) (No. 19-8878); *United States v. Jackson*, 940 F.3d 347, 353 (7th Cir. 2019); *United States v. Sullivan*, 781 F. App'x 553, 554 (7th Cir. 2019); *United States v. Ruff*, 795 F. App'x 796, 797 (11th Cir. 2020); *United States v. Gelin*, 810 F. App'x 712, 726 (11th Cir. 2020), *petition for cert. filed* (U.S. July 27, 2020) (No. 20-5178); *United States v. Garcia*, No. 17-13992, 2019 WL 7503482, *1 (11th Cir. July 9, 2019); *Young v. United States*, 943 F.3d 460, 462 (D.C. Cir. 2019); *United States v. Williams*, 03-CR-795, 2019 WL 3842597, at *4 n.5 (E.D.N.Y. Aug. 15, 2019); *United States v. Garcia*, No. 6:05-cr-00006-1, 2019 WL 4039638, at *1 (W.D. Va. Aug. 27, 2019); *United States v. King*, No. 1:03-cr-00182, 2020 WL 1274998, at *1–2 (S.D. Ind. Mar. 16, 2020); *State v. Hinton*, No. 2019-097, 2020 WL 4380703, at *4 (Vt. July 31, 2020). *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020), discussed *supra* at page 11, is also distinguishable because it involved a limited remand.

place. There were no countervailing considerations suggesting that Congress wanted to deprive anyone without a set sentence of the benefit of these new, preferred sentencing standards. And, as we already have noted, Congress generally strives to avoid "radically different sentences" for defendants "who each engaged in the same criminal conduct … and were sentenced at the same time." *Dorsey*, 567 U.S. at 276–77.

### III

The First Step Act is an historic, bipartisan attempt by Congress to take the lessons of the past and to formulate a new sentencing policy for the United States.[9] Although it elected not to reopen sentences in place on the date of enactment, Congress carefully crafted a provision to ensure that its new policy determination effectively controlled every sentence after that date. We may disagree with where and how Congress drew the line, but it was Congress's prerogative to draw that line. It had a difficult task. We ought not make the task more difficult by ignoring the clear command of the legislative directive.

---

[9] In a parallel case pending before the Ninth Circuit, members of the Legislative Branch, who were the principal drafters of the First Step Act, submitted an amici curiae brief seeking to preserve Congress's "intent to allow pre-Act offenders whose sentences are vacated to benefit from the Act's ameliorative provisions at resentencing." Brief for United States Senators Richard J. Durbin, Charles E. Grassley, and Cory A. Booker as Amici Curiae in Support of the Defendant-Appellant, 2–3, *United States v. Mapuatuli* (9th Cir.) (No. 19-10233).

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

BARRETT, *Circuit Judge*, with whom BRENNAN and SCUDDER, *Circuit Judges*, join, dissenting. Hector Uriarte was initially sentenced for firearm offenses before Congress passed the First Step Act, but we vacated his sentence on un-related grounds before the Act's effective date. *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016). Despite the district court's imposition of the initial sentence, the majority concludes that "a sentence for the offense ha[d] not been imposed as of [the] date of enactment" in Uriarte's case. *See* First Step Act § 403(b). I respectfully disagree.

As the majority sees it, a sentence "has not been imposed" as of the date of enactment if on that date the defendant is not subject to a legally binding sentence. The defendant might be in that position because he has never been sentenced; he might be in that position because he is waiting to be resentenced. Either way, the majority says, the defendant is sentence-free on the date that counts—the date that the First Step Act passed.[1]

---

[1] Because Uriarte was not subject to a legally binding sentence on the date of enactment, this case does not present the question whether a *post-*enactment vacatur would retroactively have the same effect—that is, whether the post-enactment nullification of a sentence would also mean that for legal purposes "a sentence ha[d] not been imposed" as of the date of enactment. *Cf. United States v. Jackson*, No. 15-cr-453, 2019 WL 2524786 (N.D. Ohio June 18, 2019) (addressing that factual scenario). Under that broader theory, the Act would apply to all plenary resentencings after the Act's effective date, regardless of the date of vacatur. It bears emphasis that nothing in the majority opinion—which turns entirely on the fact that Uriarte was not subject to a sentence on the Act's effective date—suggests an answer to that question. On the contrary, the majority expressly refrains from addressing it. *See* Maj. Op. at 10 n.3.

I find the government's reading of the relevant language far more persuasive. The government argues that "a sentence … has not been imposed" as of the date of enactment when, as a matter of historical fact, no sentence has ever been imposed before that date. Uriarte indisputably had been sentenced before the First Step Act took effect. Our subsequent vacatur of his sentence does not change that fact, so, the government contends, the Act does not apply to Uriarte.

These competing readings reflect different takes on the statute's use of the present-perfect tense in the phrase "has not been imposed." The present-perfect tense "denotes an act, state, or condition that is now completed or continues up to the present." THE CHICAGO MANUAL OF STYLE ¶ 5.132 (17th ed. 2017). The government reads the phrase "has not been imposed" as denoting an act that has not been completed. That act—sentencing—had been completed in Uriarte's case, even though it was subject to repetition; so, the government says, the First Step Act does not apply. The majority, by contrast, reads the phrase as denoting a condition that does not exist on the date of enactment. Because that condition—being subject to a valid sentence—did not exist for Uriarte on the relevant date, the majority concludes that the Act governs his resentencing.

The grammatical structure conceivably leaves some room for either reading, but only the government's is consistent with the specific words used in the sentence. First and foremost, the statute draws the line on the date when a sentence was "imposed." In the context of sentencing, "imposed" connotes an action by a district court, rather than the status of a defendant. *See Young v. United States*, 943 F.3d 460, 463 (D.C. Cir. 2019) ("[I]n ordinary usage a sentence is 'imposed' when

a district court pronounces it."). That is why it is perfectly coherent to describe the procedural posture of a case by saying, "a sentence was imposed last year, but it has since been vacated on appeal." The imposition of a sentence is a historical fact that can be disaggregated from the legal status of the sentenced person. And the statute's use of a verb that describes the action of the district court puts the focus on the historical fact.

Consistent with this understanding, our opinion in *United States v. Pierson* interpreted the word "imposed" to denote a past act, not an ongoing condition. 925 F.3d 913, 927–28 (7th Cir. 2019). In determining whether a sentence had been "imposed" as of the date of enactment, we did not examine Pierson's legal status to determine whether he was subject to an ongoing sentence on that date. Nor did we consider whether some plenary resentencing awaited Pierson in the future. Instead, we reasoned that a sentence had been imposed in the past. We explained, "a sentence is 'imposed' in the district court, regardless of later appeals." *Id.* at 927. And later we noted that a sentence is imposed "when the district court sentenced the defendant." *Id.* at 928. That language treats the district court's action, not the defendant's legal status, as the relevant marker. The former is a historical fact; the latter is a condition that is subject to change as a result of "later appeals." The Third Circuit has read both the statute and *Pierson* the same way. *United States v. Hodge*, 948 F.3d 160, 163–64 (3d Cir. 2020) (asserting that "a sentence is 'imposed' … 'within the meaning of' the First Step Act once 'a sentencing order has been entered by a district court'" (quoting *Pierson*, 925 F.3d at 927–28)); *see also id.* at 163 ("[W]e conclude [that] the First Step Act intentionally subjected any defendant who had *any sentence imposed* to the original § 924(c) mandatory minimum,

*even if their sentence was subsequently modified.*" (emphasis added)).[2]

As further support for the government's reading, the statute turns on the imposition of "*a* sentence," not "*the* sentence," "the final sentence," or "a sentence that continues to legally bind the defendant."[3] The word "a" is an indefinite article—that is, it "points to a nonspecific object, thing, or person that is not distinguished from the other members of a class." BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 991 (4th ed. 2016). The statute's use of the word "sentence" in a nonspecific sense is inconsistent with the majority's contention that the statute refers exclusively to an extant sentence. Though the majority resists the word's ordinary meaning, the indefinite article "a" is broad enough to refer to any sentence

---

[2] In *Hodge*, the Third Circuit had affirmed the defendant's sentence as to his § 924(c) offense, vacated it as to his territorial offenses, and remanded it to the district court for partial resentencing. 948 F.3d at 161–62. The defendant was still awaiting partial resentencing on the First Step Act's effective date, but because he remained subject to his § 924(c) sentence, that case is at least arguably distinguishable from this one—although I later address the possibility that the scope of our vacatur and remand in *Cardena* left Uriarte in the same position as the defendant in *Hodge*. Nonetheless, the Third Circuit's reasoning did not turn on that distinction. Instead, its reasoning is consistent with mine: it treated the district court's act of imposing a sentence, not the defendant's legal condition, as determinative. *See also id.* at 162 ("[W]e hold [that] the new § 924(c) mandatory minimum does not apply to defendants *initially sentenced* before the First Step Act's enactment." (emphasis added)).

[3] By contrast, in the immediately preceding subsection of the First Step Act, Congress made the application of mandatory minimums contingent on a "final" conviction. First Step Act § 403(a). It could easily have imposed the same requirement on the triggering "sentence" in section 403(b).

that has been imposed for the offense, even one that was subsequently vacated. Rather than being strained, as the majority suggests, this nonspecific meaning is consistent with common usage. If asked in 2016 whether "a sentence" had been imposed on Uriarte, one could easily respond "yes, but it was vacated on appeal."

Dismissing what it perceives to be an excessive focus on the statute's language, the majority grounds its reasoning in nontextual background principles. In particular, it asserts that resentencing happens on a "clean slate" after vacatur and that a vacated initial sentence therefore no longer carries any legal effect. *See Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016). Congress, it claims, must have legislated against this background principle when it enacted the First Step Act. And finding no evidence that Congress intended to depart from this principle, the majority presents its interpretation as self-evident.

There are several problems with this reasoning, and the first is that the majority significantly overreads what it means to say that the defendant will be sentenced on a "clean slate." A complete vacatur wipes the slate clean insofar as the defendant will be sentenced anew. *Pepper v. United States*, 562 U.S. 476, 507–08 (2011) (holding that the law of the case doctrine does not bind the district court in a de novo resentencing); *United States v. Atkinson*, 979 F.2d 1219, 1223 (7th Cir. 1992) ("[T]he district court will be writing on a clean slate and may entertain any and all objections, even those not raised at the earlier sentencing."). But a complete vacatur does not require the district court to proceed as if the initial sentencing never happened. In fact, the Sentencing Reform Act instructs

district courts to do the very opposite: a district court impos-
ing a sentence on remand must apply the Sentencing Guide-
lines "that were *in effect on the date of the previous sentencing* of
the defendant prior to the appeal." 18 U.S.C. § 3742(g)(1) (em-
phasis added); *see also Dorsey v. United States*, 567 U.S. 260, 275
(2012) (describing the Sentencing Reform Act as a background
principle against which Congress legislates). The Sentencing
Reform Act does not control this case because the disputed
part of Uriarte's sentence is dictated by statute rather than de-
rived from the Guidelines. Still, the Act's default rule for re-
sentencing—that the Guidelines apply as they existed at the
time of the initial sentencing—belies the majority's claim that
Congress legislates against a background understanding that
a vacatur erases the initial sentence for all purposes. On the
contrary, it's not unusual for the date of the initial sentencing
to control the law applicable to a resentencing—even when
more favorable law is enacted in the interim. *See United States
v. Hughes,* 733 F.3d 642, 645–47 (6th Cir. 2013) (holding the Fair
Sentencing Act inapplicable to a defendant who was awaiting
resentencing on the Act's effective date).

But even if the majority's "clean slate" principle were
sound, a background principle cannot overcome statutory
text.[4] The majority's interpretation turns almost entirely on
what it thinks Congress must have considered during the leg-
islative process. *See Walton v. United Consumers Club, Inc.*, 786

---

[4] It bears emphasis that because the traditional tools of statutory in-
terpretation yield an answer to the statute's meaning, the rule of lenity
does not apply. *See United States v. Shabani*, 513 U.S. 10, 17 (1994) ("The
rule of lenity … applies only when, after consulting traditional canons of
statutory construction, we are left with an ambiguous statute.").

F.2d 303, 310 (7th Cir. 1986) ("Courts should confine their attention to the purposes Congress sought to achieve by the words it used. We interpret texts."). It posits that Congress wanted to treat a vacatur as giving a defendant a fresh start on the law as well as on the weighing of the facts so that the benefit of this remedial statute would extend more broadly. But every statute requires a resolution of competing policy interests, and Congress "may, for all we know, have slighted policy concerns on one or the other side of the issue as part of the legislative compromise that enabled the law to be enacted." *Artuz v. Bennett*, 531 U.S. 4, 10 (2000). And on the other side of that compromise are some benefits to Congress's decision that the majority does not acknowledge.

For example, the majority's approach puts a great deal of weight on the precise decretal language of an appellate opinion. Consider a potential problem posed by the appellate opinion in this very case. The majority says that in *Cardena*, we vacated Uriarte's sentence as a whole, albeit with instructions clarifying that the scope of the remand only covered the first firearm offense. *See Cardena*, 842 F.3d at 1002 (explaining that Uriarte is "entitled to resentencing" because his entire below-guidelines sentence was anchored to the *Alleyne* error on the sentence for the first firearm offense). I have assumed that this reading of *Cardena* is correct because it does not affect my reasoning in this case. But the final words of *Cardena* invite another possibility—that we vacated only the sentence for Uriarte's first firearm offense, leaving the remainder of the sentence—including the sentence for the second firearm offense—intact. *See id.* ("We VACATE the sentences of Tony Sparkman … and Hector Uriarte *on count 8* [the first firearm offense] and REMAND for resentencing consistent with this opinion." (emphasis added)). The

practical difference between a narrow vacatur and a complete vacatur can be slight. *See United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011) (clarifying that an opinion vacating an entire sentence can still limit the scope of a remand). But under the majority's interpretation of section 403, the applicability of the First Step Act to Uriarte's second firearm offense would depend entirely on which way we read *Cardena*. If we vacated his entire sentence, he was not subject to a sentence for any firearm offense on the date that the First Step Act was enacted. But if we only vacated the sentence for the first firearm offense, then the sentence for Uriarte's second firearm offense was not "wiped clean," and he remained subject to it on the date of enactment. *Cf. Hodge*, 948 F.3d at 163 & n.4 (holding the First Step Act inapplicable when a limited vacatur left the federal firearm offense intact). It takes the majority a three-page footnote to parse whether the remand in Uriarte's case was limited or plenary. Drawing the line at the date of the initial sentencing, by contrast, makes it much easier to determine whether the Act applies to a given defendant. I am not persuaded by the majority's assumption that Congress must have subordinated this administrability advantage to the policy advantages that the majority invokes in support of its interpretation.

After all, the superiority of one policy advantage over another is not self-evident—instead, it lies in the eye of the beholder. The majority champions its interpretation as the most equitable one because it ensures that "all persons awaiting sentencing on the effective date of the Act would be treated equally, a value long cherished in our law." Maj. Op. at 8. But the majority's interpretation produces its own problematic disparities, as illustrated by this very case.

Uriarte had a codefendant, Tony Sparkman. *See United States v. Sparkman*, No. 17-3318, 2020 WL 5247575, --- F.3d --- (7th Cir. 2020). They were convicted for the same offenses, both were sentenced before the First Step Act passed, and both sentences were vacated in the same consolidated opinion. But Uriarte pushed his resentencing date back by seeking several continuances so that he could fire and then rehire counsel for his case. The majority's interpretation gives Uriarte a sentence 20 years shorter than Sparkman's—despite, it should be noted, Uriarte's greater participation in the crime—because he delayed the court with continuances. *See Hodge*, 948 F.3d at 164 (considering a similar hypothetical disparity and rejecting an interpretation that might allow it); *Hughes*, 733 F.3d at 646 (noting that the "disparities that the Court cited in *Dorsey* were those between *initial* sentencings that occurred on the same day," as opposed to equally objectionable disparities "between initial sentencings and sentencings 'upon remand.'"). As the Third Circuit observed in *United States v. Hodge*, "drawing the line at initial-sentence imposition is preferable to drawing the line at ultimate-sentence imposition. If we let all defendants awaiting resentencing capitalize on the First Step Act, we would favor defendants whose appeals—for whatever reason—took longer to resolve." *Id.* The majority thinks it is most equitable to treat Uriarte as similarly situated to defendants awaiting sentencing in other cases rather than to the codefendant with whom he was tried and initially sentenced. I am much less confident either that this is the most equitable result or that Congress shared the majority's view. Speculating about congressional desires is a dicey enterprise, which is one reason among many that we should stick to the text.

As we have said before, "[a]ny reduction in criminal penalties or in a Sentencing Guideline can pose difficult line-drawing in applying the reduction to pending cases." *Pierson*, 925 F.3d at 927. Here, Congress picked a line: the applicability of the First Step Act turns on whether a sentence had been imposed on the defendant before the date of enactment. The majority is certainly correct that the vacatur of Uriarte's initial sentence altered his legal status and required the court to re-sentence him de novo. But that does not change the historical fact that the district court did in the past impose a sentence for his firearm offense. Nor does it mean that what was imposed by the court in 2013 was not then "a sentence." Vacatur may metaphorically "wipe the slate clean," but it is not a time machine. Under the plain text of the statute, the First Step Act does not apply to Uriarte.