**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4618

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAYCO BETHEA,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:14-cr-00430-JFA-11)

Argued:  October 30, 2020                                    Decided:  January 21, 2021

Before GREGORY, Chief Judge, FLOYD, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Floyd wrote the opinion in which Chief Judge Gregory joined.  Judge Quattlebaum wrote a dissenting opinion.

**ARGUED:**  Andrew Mackenzie, BARRETT MACKENZIE, Greenville, South Carolina, for Appellant.  Andrew Robert de Holl, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:**  Peter M. McCoy, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

Defendant-Appellant Rayco Bethea appeals from the imposition of a mandatory minimum sentence of life imprisonment without release pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846. Bethea was originally sentenced in 2015, but the district court vacated and reimposed his judgment in 2019 to allow Bethea to file a direct appeal. Bethea now argues that amendments to § 841 made by the First Step Act of 2018 should have applied to the district court's reentry of judgment following the vacatur of his 2015 sentence. We agree.

I.

In June 2014, a federal grand jury indicted Bethea for conspiracy to distribute cocaine in excess of five kilograms and cocaine base in excess of 280 grams pursuant to the Controlled Substances Act (CSA), 21 U.S.C. § 841(a)(1), (b)(1)(A), and 21 U.S.C. § 846.[1] At that time, the CSA carried specific, enhanced sentences for individuals with prior felony drug convictions who violated these provisions. § 841(b)(1)(A) (2015) (amended Dec. 21, 2018). Importantly, individuals with two or more prior felony drug convictions faced a mandatory minimum sentence of "life imprisonment *without release*." *Id.* (emphasis added).

---

[1] Section 841(a)(1) criminalizes the distribution of controlled substances. Section 841(b)(1)(A) then sets forth sentencing ranges for the distribution of five kilograms or more of cocaine or 280 grams or more of cocaine base. Section 846 criminalizes and sets forth the same sentencing ranges for conspiring to engage in this conduct.

2

Bethea suffered from kidney disease, and he was released on bail in November 2014 in the hope that he would receive a kidney donation while awaiting trial. In 2015, the government filed an Information pursuant to 21 U.S.C. § 851 declaring its intent to seek an enhanced sentence based on Bethea's three prior drug convictions.[2] Bethea and the government ultimately reached a plea agreement. Bethea agreed to plead guilty to the conspiracy charge, cooperate with the government, follow all state and federal laws, and comply with his bond requirements. Bethea also agreed to partially waive his appellate rights. Specifically:

> [Bethea], in exchange for the concessions made by the Government in this Plea Agreement, waive[d] the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. (This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct raised pursuant to 28 U.S.C. § 2255.)

J.A. 39. In exchange, the government agreed to file an amended Information dismissing two of Bethea's § 851 predicate convictions. This would have reduced Bethea's mandatory minimum sentence to twenty years. § 841(b)(1)(A) (2015). The government also agreed to seek a downward departure from that mandatory minimum sentence.

In March 2015, Bethea formally pled guilty to conspiracy to distribute cocaine in excess of five kilograms and cocaine base in excess of 280 grams. During his plea

---

[2] Bethea contends that two of those predicates should only count as one prior conviction under § 841(b)(1)(A), but he stipulated to the Information's accuracy in his plea agreement. We take no position on whether the Information accurately set forth three valid predicates under the 2015 version of the statute. Today, enhanced sentences only apply to individuals with "prior conviction[s] for a *serious* drug felony." § 841(b)(1)(A) (emphasis added).

3

colloquy, Bethea made clear that he understood he was partially waiving his appellate rights. Bethea remained on bond pending sentencing because of his kidney disease. J.A. 65.

At Bethea's August 21, 2015 sentencing hearing, the government informed the district court that Bethea had continued to prepare cocaine base after his plea hearing. The government therefore withdrew its prior agreement to dismiss two of Bethea's § 851 predicates. Describing the case as "one of the saddest cases I've had in a long time," J.A. 78, the district court concluded that it was obligated to sentence Bethea to the "statutorily required" mandatory minimum sentence of life imprisonment without release. J.A. 84.[3] Addressing Bethea, the district court observed that "there's a lot of movement in Washington to do away with these mandatory sentences and if that ever happens you may benefit from it." J.A. 84. The district court also informed Bethea that—notwithstanding his appeal waiver—he "should discuss with [counsel] whether [he] ha[d] any grounds for appeal and also whether an appeal would be in [his] best interest or not." J.A. 87.

No direct appeal was ever filed. Approximately one year after sentencing, Bethea filed a pro se motion under 28 U.S.C. § 2255 asserting multiple claims of ineffective assistance by his trial counsel, including failure to file an appeal. Notably, while Bethea's § 2255 motion was pending, Congress enacted the First Step Act of 2018 (FSA), which—

---

[3] The district court never explicitly stated it was sentencing Bethea to life imprisonment without release but made clear that it was imposing the required mandatory minimum sentence for individuals with two prior felony drug convictions under § 841(b)(1)(A). Therefore, it could only have sentenced him to "life imprisonment without release." § 841(b)(1)(A) (2015).

4

among other reforms—reduced criminal sentences under § 841(b)(1)(A). Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220–21. In 2019, the district court determined that Bethea's ineffective assistance of counsel claim could not be resolved without an evidentiary hearing. Bethea was being held in a federal prison in Missouri and declined to waive his appearance at that hearing. Instead of transporting Bethea, the district court decided to simply vacate its original judgment and reimpose that judgment with a new date to restart the deadline for Bethea to appeal his sentence. The district court made no other changes to Bethea's sentence. Bethea's other claims were dismissed without prejudice. The district court also directed the clerk to enter a notice of appeal on Bethea's behalf, which brought the case before this Court for the first time.

## II.

While this appeal was pending, the government filed a motion to dismiss, contending that Bethea's claims are barred by the terms of his appeal waiver. We deferred ruling on that motion until after hearing Bethea's appeal on the merits. We now conclude that the waiver does not entirely bar Bethea's appeal, but it does curtail the scope of our review.

## A.

Typically, "a defendant who pleads guilty, and expressly waives the statutory right to raise objections to a sentence, may not then seek to appeal the very sentence which itself was part of the agreement." *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990). We

5

examine the enforceability of an appeal waiver de novo, asking whether it is valid and covers the issue on appeal. *United States v. Blick*, 408 F.3d 162, 167–68 (4th Cir. 2005).

For his appeal waiver to be valid, Bethea must have "knowingly and intelligently agreed to waive the right to appeal" as part of his plea. *Id.* at 169. Bethea does not contest that he knowingly and intelligently agreed to partially waive his appellate rights, so his appeal must be dismissed if it is covered by the scope of the waiver. Bethea's challenge to his sentence is plainly covered by the waiver's text. However, defendants may not bargain away their right to contest a small category of fundamental errors that—by definition—fall outside the waiver's scope. *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). For instance, defendants may not waive their right to contest an illegal sentence. *United States v. Thornsbury*, 670 F.3d 532, 539 (4th Cir. 2012). Not all sentencing errors create an illegal sentence, even if they increase the sentencing range; to qualify, the sentence must be "beyond the authority of the district court to impose." *Id.* (citing *United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995)). Thus, we consider whether Bethea's appeal presents a question of sentence illegality rather than mere sentencing error.

B.

In both his opening brief and response to the government's motion to dismiss, Bethea contends that the FSA's amendments to § 841(b)(1)(A) rendered his sentence illegal when the district court vacated his 2015 sentence and reimposed judgment containing that same sentence. The government argues that the FSA's amendments to

§ 841(b)(1)(A) do not apply to Bethea's 2019 corrected sentence.[4]  Generally, the validity

of a plea waiver is not disturbed by a subsequent change in law.  *See Blick*, 408 F.3d at

169–73; *United States v. Archie*, 771 F.3d 217, 221–23 (4th Cir. 2014).  However, this

Court has held that when a change in law impacts sentence legality and is made retroactive

to the time that sentence was imposed, a sentence made illegal by that change is not subject

to waiver.  *See United States v. Cornette*, 932 F.3d 204, 209–10 (4th Cir. 2019).  Bethea

argues that the FSA's amendments to § 841(b)(1)(A) applied at the time his sentence was

corrected by the district court.  Therefore, he does not seek to void an "otherwise valid

appeal waiver" through the post-hoc application of a "non-retroactive change" in the

sentencing structure.  *Id.* at 210.  He instead argues that his actual sentence was in excess

of § 841(b)(1)(A) at the time it was imposed.  Accordingly, to determine if the FSA made

Bethea's sentence illegal, we must resolve whether the FSA applied to his 2019 corrected

sentence.

Section 401(c) of the FSA makes its amendments to § 841(b)(1)(A) applicable only

under certain circumstances.  Specifically, that provision reads:

> APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section [to § 841(b)(1)(A)], shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*.

FSA § 401(c), 132 Stat. at 5221 (emphasis added).  The government contends that, because

Bethea was originally sentenced in 2015, "a sentence" was imposed prior to the FSA's

---

[4] The government makes this argument on the merits, but as we explain below, this claim is also essential to resolving the validity of Bethea's appeal waiver.

7

enactment and its amendments to § 841(b)(1)(A) do not apply to his 2019 corrected sentence. We disagree, because we conclude that the text, structure, and purpose of the Act suggest this applicability provision covers Bethea's 2019 sentence.

1.

This Court has, on two occasions, considered this statutory language and held that it does not cover individuals challenging a sentence on direct appeal who were sentenced before the FSA's enactment. *See United States v. Brunson*, 968 F.3d 325, 335–36 (4th Cir. 2020); *United States v. Jordan*, 952 F.3d 160, 171–74 (4th Cir. 2020).[5] The Third, Sixth, and Seventh Circuits have split on whether this language covers a sentence imposed before the FSA's enactment that is subsequently vacated. The Third Circuit has held that so long as any initial sentence was ever imposed prior to the FSA's enactment—notwithstanding its later vacatur—this statutory language precludes application of the FSA at any future resentencing. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020). By contrast, the Sixth and Seventh Circuits have held that individuals whose sentences were vacated before enactment of the FSA and who were still awaiting resentencing on the date of enactment have not had a sentence imposed as of the enactment date. *United States v.*

_____

[5] We note that the FSA contains several applicability provisions that make certain sentencing reforms more broadly applicable than others. Two applicability provisions— Sections 401(c) and 403(b)—use identical language and circuit courts have construed them to have the same meaning. *See, e.g.*, *Brunson*, 968 F.3d at 335. This opinion assumes both provisions have the same meaning and therefore does not distinguish case law based on which of those two sections is at issue.

*Henry*, --- F.3d ---, 2020 U.S. App. LEXIS 39799, at \*30–32 (6th Cir. 2020); *United States v. Uriarte*, 975 F.3d 596, 602 (7th Cir. 2020). However, both courts have left open whether a sentence that was vacated *after* enactment of the FSA would satisfy the language of this applicability provision. *Henry*, 2020 U.S. App. LEXIS 39799, at \*17 & n.2; *Uriarte*, 975 F.3d at 602 & n.3.[6]

This Court has not previously considered how vacated sentences fit within the meaning of Section 401(c). In this case, the district court vacated Bethea's 2015 sentence and reimposed its judgment in 2019 for the purpose of correcting Bethea's sentencing date. We conclude that Bethea's sentence is best understood as "imposed" for purposes of the FSA on the date of its reimposition, because the district court's vacatur rendered his 2015 sentence a legal nullity. Bethea's sentence accordingly falls within the ambit of Section 401(c), because he is a pre-FSA offender serving a post-FSA sentence. The FSA's amendments to § 841(b)(1)(A) therefore applied to his corrected sentence.

The government argues that the plain language of Section 401(c) favors the opposite conclusion. In so doing, it emphasizes Section 401(c)'s use of an indefinite article to ask whether "a sentence" was imposed before the FSA's enactment, rather than "the sentence." *Cf. Hodge*, 948 F.3d at 163. In effect, the government asks us to determine that Congress intended the phrase "a sentence" to mean "any pre-FSA sentence."

---

[6] Multiple circuits acknowledge this is still an open question. *See United States v. Voris*, 964 F.3d 864, 875 n.12 (9th Cir. 2020); *United States v. Gomez*, 960 F.3d 173, 177 n.8 (5th Cir. 2020); *United States v. Brown*, 935 F.3d 43, 46 n.1 (2d Cir. 2019).

But it does not follow from Congress's use of an indefinite article that "a sentence" means *any* sentence, even if later vacated. As the Seventh Circuit has persuasively reasoned, the government's construction places far too much emphasis on the use of an indefinite article. *See Uriarte*, 975 F.3d at 604. Although true that Congress did not use a phrase such as "the sentence," "the ultimate sentence," or "the final sentence"—any one of which would suggest courts look to the latest sentence imposed—neither did it use a phrase such as "any sentence," "the first sentence," "the initial sentence," or "the original sentence"—any one of which would be more suggestive of the government's proposed interpretation. *See id.*; *Henry*, 2020 U.S. App. LEXIS 39799, at *18. Indeed, Congress made Section 401 applicable to "any offense" where "a sentence . . . has not been imposed." *See* FSA § 401(c), 132 Stat. at 5221. "Had Congress intended the phrase 'a sentence' to convey a very broad meaning, it could have used the word 'any,' as it did earlier in the same sentence . . . ." *Uriarte*, 975 F.3d at 604 (discussing the identically worded Section 403(b)).

This case ultimately turns on whether a pre-FSA sentence that is vacated after enactment "has not been imposed as of such date of enactment." FSA § 401(c), 132 Stat. at 5221.[7] The government argues that the past tense construction of Section 401(c)—that is, its requirement that a sentence "has not been imposed"—suggests that this provision asks the purely factual question of whether a district court ever imposed a sentence before

---

[7] The meaning of this clause has been left open by this Court. *See Jordan*, 952 F.3d at 173 n.6 ("[W]e need not address today the precise moment at which a district court sentence is 'imposed' for purposes of [the identically worded] § 403(b) . . . .").

10

enactment. Ultimately, the government reads the FSA to distinguish individuals "*initially* sentenced before December 21, 2018[] from those who were not." Resp. Br. at 18 (emphasis added).

We decline to draw this inference from the verb tense used in the Act. Instead, we construe the requirement that a sentence "has not been imposed as of such date of enactment," FSA § 401(c), 132 Stat. at 5221, to merely preclude the use of the FSA to challenge a pre-FSA sentence on direct appeal. Our prior case law makes clear that district courts, not appellate courts, impose sentences, and therefore "a sentence" on appeal has already been "imposed" for purposes of the FSA. *Brunson*, 968 F.3d at 335–36; *Jordan*, 952 F.3d at 173. This construction is sensible: it gives individuals the benefit of the FSA when being sentenced but does not permit appellate courts to disturb sentences validly imposed by the district court under the earlier statutory scheme. But this describes how we understand only a sentence pending on appeal, not a sentence vacated before ever reaching appeal. *See Jordan*, 952 F.3d at 172 ("[I]n common usage in federal sentencing law, a sentence is 'imposed' when the district court announces it, not when appeals are exhausted.").

We do not read Section 401(c) to further prohibit application of the FSA to individuals whose sentences have been vacated after the FSA's enactment. "We must 'assume that our elected representatives, like other citizens, know the law.'" *Smith v. Regan*, 844 F.2d 195 (4th Cir. 1988) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979)). And "[n]othing in the text of the statute suggests that Congress intended to

11

create an exception to the ordinary effect of the vacatur of a sentence." *Uriarte*, 975 F.3d at 602.

In this case, the district court's vacatur and reentry of judgment nullified Bethea's original sentence such that a sentence cannot legally be said to have been imposed until 2019. As this Court explained in *United States v. Hadden*, § 2255 contemplates specific types of remedies if a criminal judgment is infirm. 475 F.3d 652, 667–68 (2007). "[T]he end result of a successful § 2255 proceeding must be the vacatur" of a sentence followed by a remedy (1) granting release, (2) granting a new trial, or (3) granting "*a new* sentence, be it *imposed* by (a) a resentencing or (b) a corrected sentence." *Id.* at 661 (emphasis added). A corrected sentence "is an entirely new sentence," which permits a direct appeal from its imposition as part of the individual's original, criminal case. *Id.* at 664. And a "'new' sentence" is imposed by correction even if that correction merely changes the date to permit appeal. *Id.* at 661 n.9.

The general, legal understanding of vacatur is that it renders the original judgment null and void. *See United States v. Muhammad*, 478 F.3d 247, 250 (4th Cir. 2007) ("[W]e vacated [the appellant's] original sentence and remanded for resentencing . . . . As a result, the prior sentencing proceedings were nullified . . . ."); *United States v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004) ("'Vacate' means '[t]o render an act void; as, to vacate an entry of record, or a judgment.'" (alteration in original) (quoting Black's Law Dictionary 1548 (6th ed. 1990)); *accord Pepper v. United States*, 562 U.S. 476, 507 (2011) (noting that

vacatur of a sentence "wipe[s] the slate clean").[8]  Therefore, the district court's action

nullified the judgment containing the original sentence and then reimposed judgment *after*

the FSA's passage.  And it necessarily did so for the precise reason of setting the date of

sentencing in 2019 to permit Bethea's direct appeal as if the 2015 judgment had never

occurred.  This conclusion is reinforced by the fact that, even had he wanted to, Bethea

could not appeal from the original judgment.

We recognize that the Sixth and Seventh Circuits have not decided whether this

statutory language covers individuals whose sentences are vacated *after* enactment,

because those individuals would have been sentenced on the date of enactment.  *Henry*,

2020 U.S. App. LEXIS 39799, at *17 & n.2; *Uriarte*, 975 F.3d at 602 & n.3.  But if

Bethea's vacated sentence is a legal nullity, it matters not when that vacatur occurred,

because his only legally effective sentence was imposed after the FSA's enactment.

Therefore, the requirement that "a sentence for the offense [have] not been imposed

as of such date of enactment,"  FSA § 401(c), 132 Stat. at 5221 (emphasis added), is best

understood to preclude an appellant from using the FSA to challenge a pre-FSA sentence

on appeal—a reading that comports with our prior case law.  *See Brunson*, 968 F.3d at 335.

Indeed, Congress "elected not to reopen sentences in place on the date of enactment."

---

[8] To appreciate the legal effect of vacatur on Bethea's original sentence, consider the Fifth Circuit's alternative approach to remedying ineffective assistance of counsel claims.  In *United States v. West*, 240 F.3d 456, 460 (5th Cir. 2001), the court instructed that the proper procedure for permitting an out-of-time appeal is to dismiss the § 2255 petition and simply "re-enter[]" judgment without vacating the original judgment.  By doing so, individuals may appeal from the district court's "earlier, underlying criminal judgment." *Id.* at 458–59 (emphasis omitted).

*Uriarte*, 975 F.3d at 606. But when individuals, like Bethea, have their original sentence nullified by the district court, it is not the FSA that reopens their sentence. Any new sentence imposed after enactment must comply with the FSA's requirements. Congress designed Section 401 to reduce mandatory drug sentences. This Court's construction of Section 401(c) gives effect to the congressional intent that "its new policy determination effectively control[s] *every* sentence after" the date of enactment. *See id.* (emphasis added).[9]

## 2.

The government next contends that the structure of the FSA supports its reading, because the applicability provisions for other sentencing reforms make use of different language. In particular, the government examines the following applicability provisions. Section 401(a)(2), (b) makes certain enhancements applicable "after a prior conviction for a serious drug felony or serious violent felony has become final." 132 Stat. at 5220–21.

---

[9] Senators Richard Durbin, Charles Grassley, and Cory Booker—the FSA's lead sponsors and the "principal drafters" of Section 401—recently submitted an amici curiae brief in the Ninth Circuit Court of Appeals arguing that Congress intended Section 401(c) to capture both "individuals facing an initial sentencing proceeding and individuals facing resentencing following vacatur of a prior sentence." Brief for Amici Curiae United States Senators Richard J. Durbin, Charles E. Grassley, and Cory A. Booker in Support of Defendant-Appellant and Vacatur at 2, *United States v. Mapuatuli* (9th Cir. May 12, 2020) (No. 19-10233). Accordingly, "[a]lthough Congress did not intend that Section 401 serve as a vehicle for reopening or vacating sentences," *id.* at 10, neither did it "intend[] to give legal effect to sentences that otherwise are void," *id.* at 3. *See also Henry*, 2020 U.S. App. LEXIS 39799, at *22–23 (describing same and noting that this brief "clearly shows Congress's intent to apply [§ 401] to persons *whose sentences were vacated after the law's enactment*." (emphasis added)).

14

Section 402(b) asks whether a "conviction [was] entered on or after the date of enactment." *Id.* at 5221.  And Section 404(b) makes certain amendments retroactively applicable "as if [they] . . . were in effect at the time the covered offense was committed."  *Id.* at 5222.

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally . . . ."  *Russello v. United States*, 464 U.S. 16, 23 (1983).  The government argues that Section 404(b) demonstrates that Congress knows how to make amendments retroactive to all cases.  And Section 401(a)(2), (b) demonstrates that Congress knows how to make certain consequences applicable only to final sentences.  True, but Congress's use of this language does not prove the government's conclusion: that Section 401(c) can only be read to "dr[aw] a line separating pre-Act offenders who were initially sentenced before December 21, 2018[] from those who were not."  Resp. Br. at 18.

Again, the government's argument runs into the plain language of the Act: had Congress intended to draw the line at individuals "initially sentenced" before the FSA's enactment, it surely could have said so.  And Section 401(c) can be read consistently with these other applicability provisions without requiring the government's proposed interpretation.  Section 401(c), as we construe it, covers Bethea's post-enactment sentence without requiring application of the FSA to any case pending on appeal or the reopening of finalized cases.  Whereas Section 401(a)(2) applies after a sentence is final and Section 404(b) permits the reopening of finalized sentences, Section 401(c) applies only to sentences imposed after enactment.  It therefore captures certain pre-Act conduct—unlike Section 402(b)—while retaining a limiting principle lacking in Sections 401(a)(2) and

15

404(b): an appellant may not make use of Section 401's amendments to § 841(b)(1)(A) for the first time on appeal to disturb an otherwise valid sentence under the earlier version of the statute.[10]

3.

The government finally contends that this construction would produce inequitable results. For instance, two co-defendants could be sentenced for the same offense. The first defendant may win a resentencing and then receive that sentence prior to the enactment of the FSA. The second defendant may—through a procedural quirk—win a resentencing *after* the FSA is enacted. According to the government, Congress could not have intended that second defendant to receive the windfall of a reduced sentence.

"[D]isparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). In this case, Congress drew that line against the backdrop of how courts understand the legal

---

[10] The government also argues that the savings statute, 1 U.S.C. § 109, precludes our interpretation of Section 401(c). Section 109, enacted prior to the FSA, provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide." *Id.* However, Section 401(c) explicitly applies to individuals whose conduct predated its enactment so long as no sentence "has . . . been imposed as of such date of enactment." FSA § 401(c), 132 Stat. at 5221. This provision is thus a clear exception to the general rule codified in the savings statute. *See Uriarte*, 975 F.3d at 602. And as our analysis above makes clear, the FSA's "language, structure, and basic objectives" all support the conclusion that Section 401(c) covers Bethea's sentence. *See United States v. Ward*, 770 F.3d 1090, 1096 (4th Cir. 2014) (quoting *Dorsey v. United States*, 567 U.S. 260, 264 (2012)).

effect of vacatur. We will not read the otherwise plain import of the statute to exclude Bethea from a sentence in keeping with congressional intent simply because that sentence is not available to some other defendant.

*     *     *

Having determined the FSA's amendments to § 841(b)(1)(A) applied to Bethea's 2019 corrected sentence, we must still determine whether those amendments rendered his sentence illegal. The government contends that even after the FSA was enacted, § 841(b)(1)(A) still contained a maximum sentence of life imprisonment. Accordingly, even if the FSA applied to his 2019 corrected sentence, Bethea was still sentenced within the statutory maximum. The government is correct that Bethea's waiver bars consideration of whether the district court was required to impose a different *minimum* sentence in 2019. *See United States v. Copeland*, 707 F.3d 522, 529–30 (4th Cir. 2013) (holding that appeal was barred by waiver when challenge implicated only mandatory minimum sentence). But Bethea's sentence of life imprisonment without release—which was the mandatory minimum sentence in 2015—was no longer included in the text of § 841 in 2019—which only permitted a maximum sentence of "life imprisonment." *Compare* § 841(b)(1)(A) (2015), *with* § 841(b)(1)(A) (2019). We conclude that this change in the statutory language implicates not just the minimum sentence Bethea could have received, but also the maximum sentence. We therefore turn to the merits of whether the district court erred by sentencing Bethea to life imprisonment without release rather than life imprisonment.

17

Typically, this Court examines the substantive and procedural reasonableness of a sentence, *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010), but the sentence from which Bethea appeals was imposed as a remedy following his § 2255 motion. We review § 2255 remedial relief in the form of a corrected sentence for abuse of discretion. *Hadden*, 475 F.3d at 667.

The government contends, however, that this Court may only review Bethea's claim for plain error, because Bethea never raised this sentencing error with the district court. But "[t]he plain-error standard applies only if a defendant has an opportunity to object in the trial court." *United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020) (holding that plain error did not apply when claim "arose, almost by definition, only after [the appellant's] sentencing hearing and after the judgment was entered and final"); *United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020) (noting lack of "meaningful opportunity to object" when district court adopted a sentencing position sua sponte); Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

In this case, Bethea could not have contested the legality of his sentence until it was imposed by written judgment in 2019. Bethea's various § 2255 filings requested various forms of relief: a plenary resentencing, leave to withdraw his guilty plea, and an evidentiary hearing on his ineffective assistance of counsel claims. The district court instead reentered judgment without any opportunity for a hearing at which Bethea could have objected. We

recognize, of course, that vacatur and reimposition of sentence is a "common remedy" for this sort of claim. *Hadden*, 475 F.3d at 661 n.9. But that common remedy as imposed in this case precluded Bethea from objecting to the entry of that sentence, such that any error in the sentence itself "arose, almost by definition" after his remedy was finalized. *Rogers*, 961 F.3d at 295. We therefore will not hold Bethea to the more stringent plain error standard.

B.

Finally, we conclude that the district court abused its discretion by imposing a sentence of life imprisonment without release, because that sentence was no longer permitted in 2019. To see why, we turn to the statutory language:

In 2015, individuals convicted of conspiracy to distribute five kilograms or more of cocaine or 280 grams or more of cocaine base faced the following sentencing structure:

> [S]uch person **shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life** and if death or serious bodily injury results from the use of such substance **shall be not less than 20 years or more than life** . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person **shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment** and if death or serious bodily injury results from the use of such substance **shall be sentenced to life imprisonment** . . . . If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person **shall be sentenced to a mandatory term of life imprisonment** *without release* . . . .

§ 841(b)(1)(A) (2015) (emphasis added). The FSA then amended this sentencing structure. FSA § 401(a)(2)(A), 132 Stat. at 5220. At the time the district court reimposed judgment in 2019, that section read:

> [S]uch person **shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life** and if death or serious bodily injury results from the use of such substance **shall be not less than 20 years or more than life** . . . . If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person **shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment** and if death or serious bodily injury results from the use of such substance **shall be sentenced to life imprisonment** . . . . If any person commits a violation of this subparagraph . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person **shall be sentenced to a term of imprisonment of not less than 25 years** . . . .

§ 841(b)(1)(A) (2019) (emphasis added).

In 2015, the district court sentenced Bethea as "statutorily required" to the mandatory minimum sentence for individuals with two or more felony drug convictions. *See* J.A. 84 (noting that sentence was based on "the statutory provisions for a mandatory sentence in this case"). Under § 841(b)(1)(A) (2015), that mandatory sentence was life imprisonment *without release*. But at the time the district court vacated and then reimposed its judgment, the statute only permitted a maximum sentence of life imprisonment. *See* § 841(b)(1)(A) (2019).[11]

---

[11] The written judgment as entered in 2015 and 2019 omits the phrase "without release." However, this Court has made clear that when there is a conflict between the orally pronounced sentence and the judgment, the orally pronounced sentence controls. *See Rakes v. United States*, 309 F.2d 686, 687–88 (4th Cir. 1962). The district court made clear in 2015 that Bethea was being sentenced to the required mandatory minimum, which

Multiple canons of construction support the conclusion that the distinction between life imprisonment and life imprisonment without release is one with legal import. "The plain language of a statute controls where it is not ambiguous and not unconstitutional." *United States v. Luskin*, 926 F.2d 372, 376 (4th Cir. 1991). As a corollary to that rule, we must presume Congress intends different meaning when it uses different language across a statute. *Russello*, 464 U.S. at 23. We must also construe statutes to "avoid any interpretation that may render statutory terms meaningless or superfluous." *Scott v. United States*, 328 F.3d 132, 139 (4th Cir. 2003).

The 2015 version of § 841(b)(1)(A) clearly distinguished between individuals who may be sentenced to life imprisonment and individuals—like Bethea—who were subject to a mandatory sentence of life imprisonment without release. We presume that Congress's use of this distinct language to describe a sentence for one specific category of offenders created a distinct sentence. *See Russello*, 464 U.S. at 23. Indeed, § 841(b)(1)(A) (2015) referred to "life" or "life imprisonment" consistently throughout the statute before switching, at the very end, to "life imprisonment without release." This presumption is further supported by the plain meaning of the two phrases. *See Luskin*, 926 F.2d at 376. Examined side-by-side, life imprisonment without release is read most naturally as a more severe sentence than life imprisonment, because it contemplates a punishment more total in its effects. Finally, alternative readings would produce superfluity issues. *See Scott*,

_____

at the time was life imprisonment without release. The district court then reentered its judgment without changing that sentence in 2019, thereby reimposing the same sentence.

328 F.3d at 139. "Life imprisonment without release" cannot be read as the equivalent of "life imprisonment" without rendering the words "without release" superfluous. Nor can it be read to mean "life imprisonment without parole," because a separate clause already made clear that *no individual* sentenced under § 841 was eligible for parole. *See* § 841(b)(1)(A) (2015).[12] Thus, to avoid superfluity, the words "without release" must denote a more severe punishment than "life imprisonment," which forecloses access to non-parole sentencing relief.[13]

In addition to the language itself, the statute's structure supports this reading. We "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000). Read as a whole, § 841(b)(1)(A) (2015) created a scheme that *increased* the criminal penalties for conspiracy to distribute cocaine as the number of aggravating factors increased. Indeed, "Congress . . . mandated a progressive, incremental, 'stairstep' approach to punishment of repeat offenders," the "final step" of which required life imprisonment without release. *United States v. Blackwood*, 913 F.2d 139, 147 (4th Cir. 1990).

---

[12] Congress also abolished parole in 1984, *Richmond v. Polk*, 375 F.3d 309, 316 (4th Cir. 2004), and therefore "life" and "life without possibility of parole" mean the same thing in the federal system, *United States v. Under Seal*, 819 F.3d 715, 719 n.4 (4th Cir. 2016).

[13] We do not decide today whether a sentence of life imprisonment without release precludes applications for compassionate release under 18 U.S.C. § 3582(c). We note that under the current version of that statute, compassionate release can be considered "in any case" in which a prisoner satisfies certain conditions. *Id.* § 3582(c)(1).

Once Congress stripped this language from § 841, courts were no longer empowered to impose this separate sentence. The practical consequences for Bethea may be minimal; but this does not alter the conclusion that, in 2019, the district court was without authority to impose a sentence of life imprisonment without release.[14] Nor is the distinction pure formalism. For instance, Congress could pass a law retroactively reducing "sentences of life imprisonment" for nonviolent drug offenders. Alternatively, Congress could make nonviolent drug offenders sentenced to life imprisonment eligible for supervised release. Bethea would be ineligible for either reform, because he received the distinct, more severe sentence of life imprisonment without release. We hold that Congress's clear distinction between the two sentences had legal significance and his 2019 corrected sentence was illegal.

IV.

The procedural posture of this case defies easy categorization. This is a classic close case and our holding is a narrow one: because Bethea's sentence was nullified following a § 2255 motion—the very purpose of which was to change the date of his sentencing

---

[14] We previously held in *United States v. Surratt*, 797 F.3d 240, 255–57 (4th Cir. 2015), that an appellant could not seek relief from an illegal sentence under the savings clause based on a mandatory sentence of life imprisonment without release, because § 841(b)(1)(A) still provided for life imprisonment. That ruling was vacated by this Court's decision to rehear the case en banc and does not control. *United States v. Surratt*, No. 14-6851, 2015 U.S. App. LEXIS 20881 (4th Cir. Dec. 2, 2015); 4th Cir. R. 35(c) ("Granting of rehearing en banc vacates the previous panel judgment and opinion . . . ."). The appeal was ultimately rendered moot while en banc consideration was pending. *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017).

23

judgment to permit a direct appeal—the FSA applied to his sentence as imposed in 2019. In so holding, we look to the unique remedy imposed by the district court and its legal import.

We also recognize that Bethea's waiver of his appellate rights truncates the scope of the remedy we may impose. Because the FSA in 2019 did not permit life imprisonment without release, his sentence was illegal. We therefore vacate the district court's judgment and instruct it to correct Bethea's sentence, consistent with this opinion. We note, however, that § 2255 remedies are within the district court's equitable discretion, and it may decide instead that plenary resentencing is appropriate.[15]

*VACATED AND REMANDED*

---

[15] We also note this Court's recent opinion in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). In that case, we recognized that individuals in Bethea's position may also be eligible for compassionate release under 18 U.S.C. § 3582, as amended by the FSA. *Id.* at 284–88.

QUATTLEBAUM, Circuit Judge, dissenting:

To me, this is a simple case of statutory construction. The outcome turns on the unambiguous text of Section 401(c) of the First Step Act. There, Congress mandated amended sentences for certain drug offenses but limited retroactivity of the provision "to any offense that was committed before the date of enactment of [the] Act, if a sentence for the offense has not been imposed as of such date of [the Act's] enactment." FSA § 401(c), 132 Stat. at 5221. The Act went into effect on December 21, 2018. All parties acknowledge that Bethea was sentenced for a drug offense in 2015—nearly three years prior to the Act's effective date. Therefore, under its plain language, the Act's amendments do not apply to Bethea.

The majority concludes, however, that, under § 401(c), the district court should have applied § 841(b)(1)(A)—as amended by the Act—to Bethea's 2019 judgment.[*] For that reason, the majority vacates the district court's judgment and instructs the district court to

---

[*]As the majority notes, the district court vacated and reentered its judgment as a result of Bethea's claim that his trial counsel was constitutionally ineffective for failing to file a direct appeal, among other issues. The district court took this approach—in large part—due to logistical issues related to Bethea's medical condition and Bethea's refusal to consent to video conferencing technology for a hearing on the ineffective assistance of counsel claim of his § 2255 petition. Having considered Bethea's unique circumstances, the district court's efforts were aimed at providing Bethea with the relief he sought in his claim for ineffective assistance of counsel, the ability to appeal. Thus, it provided Bethea with a new appeal window and otherwise reentered the same judgment. Despite having obtained that relief, the only claim Bethea pursues on appeal now is whether the district court abused its discretion in reimposing a sentence upon Bethea without regard to the First Step Act. Of course, this is not a claim that his trial counsel could have pursued on appeal in 2015. The Act did not exist.

25

correct Bethea's sentence. It reasons that, although a sentence for Bethea's drug offense had already been imposed as of the time of the Act's enactment, that sentence was vacated and the district court reentered its judgment in 2019, after the enactment date. In those circumstances, the majority concludes the prior sentence has no effect on the Act's applicability.

The problem with this reasoning, in my view, is that it rewrites this portion of the Act. The amendments set forth in the Act do not apply if a sentence for the offense had been imposed before the Act's enactment date. And whether or not Bethea's sentence had been vacated, it does not change the historical fact that a sentence for his offense had been imposed by a district court. Under the plain language of the Act, that is fatal to Bethea's claim.

Congress had a variety of options in determining when the amended drug sentences should apply. It chose to draw that line of application only where "a sentence for the offense has not been imposed as of such date of [the Act's] enactment." *Id.* As a matter of policy, we might have different views of that line-drawing exercise. But it is not our role to wade into those matters of policy. In my view, we should simply apply the text as written.

I do not deny that Congress could have been more clear prescribing the Act's amended sentences not to apply when, like here, a prior sentence has been vacated. It could have, for example, written the Act as follows: "if *any* sentence, *whether vacated or not,* for the offense has not been imposed as of such date of enactment." But almost any statutory language can be made clearer. Unambiguity does not require perfection. When language is

26

unambiguous, as I believe the pertinent language of the Act is, we should not reject it just because it could be made even more clear.

For these reasons, I would affirm the district court. I respectfully dissent.